741 A.2d 708

COMMONWEALTH of Pennsylvania, Appellee,

v.

Lenwood MASON, Appellant.

Supreme Court of Pennsylvania.

Argued April 27, 1999.

Decided Nov. 24, 1999.

Reargument Denied Jan. 12, 2000.

502

504

Gerald A. Stein, Philadelphia, for Lenwood Mason.

Catherine Marshall, Philadelphia, for Com.

Andrew S. Gibson, Philadelphia, Robert A. Graci, Harrisburg, for Office of Attorney General.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

Following a jury trial, Appellant Lenwood Mason was found guilty of first-degree murder for the killing of Iona Jeffries. The jury returned a verdict of death, and on February 20, 1996, the trial court formally imposed the death sentence. Upon petition by Appellant's trial counsel, the court ordered that counsel be permitted to withdraw, as private counsel had been retained. New counsel for Appellant filed a petition for collateral review under the Capital Unitary Review Act, 42 Pa.C.S. § 9570, et seq.,[1] which the trial court denied. This direct appeal followed.[2] For the reasons presented below, we affirm the judgment of sentence.

 Although Appellant concedes that he fatally stabbed Iona Jeffries, he claims in his first allegation of error that there was insufficient evidence to support the jury's verdict of first-degree murder. As in all cases in which the death penalty has been imposed, this Court is required to independently review the record to determine whether the evidence is sufficient to sustain the verdict for murder in the first degree.

1. The Capital Unitary Review Act was later suspended by this Court. See In re Suspension of the Capital Unitary Review Act, 554 Pa. 625, 722 A.2d 676 (1999).

2. Pursuant to 42 Pa.C.S. § 9711(h), this Court has automatic jurisdiction to review the trial court's judgment of a sentence of death.

*See Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). In conducting such a review, we must view the evidence admitted at trial, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as verdict winner, and determine whether the jury could find every element of the crime beyond a reasonable doubt. *Commonwealth v. Michael,* 544 Pa. 105, 110–12, 674 A.2d 1044, 1047 (1996).

▬▬▬ Evidence is sufficient to sustain a conviction for first-degree murder where the Commonwealth establishes that the defendant acted with a specific intent to kill, that a human being was unlawfully killed, that the defendant did the killing and that the killing was willful, deliberate and premeditated. 18 Pa.C.S. § 2502(d); *Commonwealth v. Spotz,* 552 Pa. 499, 505–07, 716 A.2d 580, 583 (1998). Circumstantial evidence alone is sufficient to prove first-degree murder. *Commonwealth v. May,* 540 Pa. 237, 246, 656 A.2d 1335, 1340 (1995).

Viewed under these standards, the record below establishes that on March 31, 1994, police were called to the 3800 block of Clearfield Street in Philadelphia. Officer Terry Brown observed Appellant walking on Clearfield Street, with Iona Jeffries close to his side. Noting a frightened look on Ms. Jeffries' face, the officer approached her and asked if she was all right. The officer noticed bruises on Ms. Jeffries' forehead, shoulder, neck and mouth. Although Appellant told the officer that Ms. Jeffries had been attacked by several other women, Ms. Jeffries informed the officer that Appellant had actually caused her injuries. Ms. Jeffries explained to the officer that she was reluctant to press charges against Appellant, as she feared he would kill her. Based on his own observations and Ms. Jeffries' statements, however, the officer placed Appellant under arrest.

Approximately three months later, on the evening of June 18, 1994, Ms. Jeffries was at a bar, Cadillac Slim's, with Appellant and several of her friends. Appellant had been released from prison two days earlier, on June 16, 1994.

When Ms. Jeffries and her friends decided to leave Cadillac Slim's and go to another club, Ms. Jeffries asked that a male acquaintance drive Appellant home, as she did not want him to accompany her to the club. Upset by Ms. Jeffries' plans to exclude him, Appellant yelled, "You want it like that?" and ran out of the bar.

At approximately 9:30 the following morning, Ms. Jeffries' mother, Mrs. Wisteria Jeffries, was at her home when she heard Appellant banging on the door. As Wisteria Jeffries approached the door, she saw Appellant's hand protruding through the screen door. When Wisteria Jeffries asked Appellant what he wanted, he replied that he needed to speak with Ms. Jeffries. Wisteria Jeffries explained that Ms. Jeffries was asleep. After Appellant insisted that he speak with Ms. Jeffries, Wisteria Jeffries told Appellant to wait outside while she got Ms. Jeffries. She locked the door and went upstairs to Ms. Jeffries' room, where Ms. Jeffries was sleeping on a bed with her then three year-old son, Anthony. Ms. Jeffries refused to come downstairs. Wisteria Jeffries returned to the front door and told Appellant that Ms. Jeffries was sleeping and that he would have to wait to speak with her. Appellant then forced his way into the house, pushed past Wisteria Jeffries, and ran up the stairs. Wisteria Jeffries immediately called the police.

Wisteria Jeffries retrieved a knife from the kitchen and began to head upstairs, when she saw Appellant descending the steps. Appellant stated to Wisteria Jeffries, "I got her now." At that point, Wisteria Jeffries attempted to stab Appellant, but he pushed her aside and ran outside, where a neighbor, Greg Bell, saw Appellant placing what appeared to be a knife into the waistband of his pants. Wisteria Jeffries ran upstairs to Ms. Jeffries' bedroom and found Ms. Jeffries bleeding profusely from multiple stab wounds. Police and rescue units arrived and Ms. Jeffries was taken to the hospital, where she was pronounced dead. Later that same day, Appellant surrendered to the police and was charged with murder in the first degree, burglary and possessing an instrument of crime.

At Appellant's trial, Dr. Haresh G. Mirchandani, the chief medical examiner for Philadelphia County, testified that the cause of Ms. Jeffries' death had been multiple (eighteen) knife wounds to the body. According to Dr. Mirchandani, Ms. Jeffries had suffered knife wounds to her head, neck, chest, back, abdomen, arm, groin and leg. Ms. Jeffries' son, who was four years old at the time of the trial, testified that he was on the bed with his mother when Appellant entered the bedroom and stabbed his mother with a knife.

Appellant testified on his own behalf, claiming that he had been drinking and doing drugs, including PCP for the first time, at the bar on the night before the murder. He testified that after he smoked the PCP, everything went blurry and that he did not recall leaving Cadillac Slim's or going to Ms. Jeffries' house on the morning of her murder. He further maintained that he did not regain his senses again until late in the evening on the day of the murder, when he was already in jail. Appellant's mother and brother also testified in Appellant's defense. Essentially, they claimed that when they saw Appellant on the day of the murder, he was under the influence of drugs and that his condition was unlike any "high" that they had ever seen him experience.

On February 15, 1996, the jury found Appellant guilty of first-degree murder, burglary and possessing an instrument of crime. After a penalty hearing, the jury found that there were two aggravating circumstances and no mitigating circumstances.[3] The jury therefore returned a verdict of death for the murder conviction, which the trial court formally imposed on February 20, 1996.

■ Appellant first argues that there was insufficient evidence to establish that he acted with premeditation, a finding necessary to sustain his conviction for first-degree murder. He essentially contends that the following circumstances sur-

3. Specifically, the jury found as aggravating circumstances that Appellant committed the murder of Iona while he was engaged in the commission of a felony, 42 Pa.C.S. § 9711(d)(6), and that he had a significant history of committing crimes of violence, 42 Pa.C.S. § 9711(d)(9).

rounding the crime suggest a lack of premeditation on his part: (1) that he did not threaten Ms. Jeffries or her mother prior to the stabbing, (2) that he did not initially break down the Jeffries' screen door and (3) that he did not conceal his identity or eliminate the witnesses to the stabbing. This claim fails.

■ The period of premeditation necessary for first-degree murder "may be very brief." *Commonwealth v. Green*, 493 Pa. 409, 415, 426 A.2d 614, 617 (1981). Indeed, "design to kill can be formulated in a fraction of a second," and premeditation and deliberation exist "whenever there is a conscious purpose to bring about death." *Commonwealth v. O'Searo*, 466 Pa. 224, 240, 352 A.2d 30, 37 (1976). Here, the evidence established that Ms. Jeffries' last contact with Appellant before he broke into her home was at Cadillac Slim's, where, after Ms. Jeffries indicated that she did not want Appellant to accompany her and her friends to their next destination, Appellant yelled, "You want it like that?" and ran out of the bar. Despite Appellant's allegations to the contrary, the jury was clearly entitled to conclude from this evidence, coupled with the fact that Appellant went to Ms. Jeffries' house seven and one-half hours later armed with a knife, that Appellant had ample time to, and did in fact, premeditate the murder. The circumstances recited by Appellant simply do not, as a matter of law, foreclose a finding of premeditation. Accordingly, Appellant's claim that the evidence was insufficient to establish premeditation fails to provide him with any basis for relief.

Appellant also contends that the jury erred in failing to find that he was acting under the "heat of passion" when he fatally stabbed Ms. Jeffries. This claim lacks merit.

■ A "heat of passion" defense is a partial defense to murder. *Commonwealth v. McCusker*, 448 Pa. 382, 386, 292 A.2d 286, 288 (1972). Under the Crimes Code, a person is guilty of voluntary manslaughter, as opposed to murder, if at the time of the killing he acted under a sudden and intense passion resulting from serious provocation by the victim. 18

Pa.C.S. § 2503(a); *Commonwealth v. Browdie*, 543 Pa. 337, 343–45, 671 A.2d 668, 671 (1996). "Heat of passion" includes emotions such as anger, rage, sudden resentment or terror, which renders the mind incapable of reason. *Commonwealth v. Harris*, 472 Pa. 406, 408, 372 A.2d 757, 758–59 (1977).

Here, Appellant does not claim that his quarrel in the bar with Ms. Jeffries, which occurred more than seven and one-half hours before the stabbing, caused him to kill Ms. Jeffries in the heat of passion. Rather, Appellant claims that he was so intoxicated at the time of the stabbing that he can't remember whether words were exchanged which would give rise to a heat of passion defense. However, there was no evidence to support a finding that Ms. Jeffries did anything immediately before the stabbing to provoke Appellant so as to cause him to act in the heat of passion. In fact, Ms. Jeffries' son testified that his mother was just lying on the bed when Appellant came into the room and began stabbing her. N.T., 2/12/96, at 77–80; *see also* N.T., 2/9/96, at 146–47. Thus, the record in the instant case simply does not support Appellant's speculative claim that he was acting under the heat of passion when he stabbed Ms. Jeffries to death. *See Commonwealth v. Speight*, 544 Pa. 451, 467, 677 A.2d 317, 325 (1996) (where defendant presented no evidence that he was acting under heat of passion or killing was result of serious provocation, case cannot support verdict of heat of passion voluntary manslaughter); *Commonwealth v. Walker*, 540 Pa. 80, 92, 656 A.2d 90, 92 (1995), *cert. denied*, 516 U.S. 854, 116 S.Ct. 156, 133 L.Ed.2d 100 (1995) (defendant's heat of passion claim meritless where defendant failed to demonstrate that there was sufficient provocation to incite reasonable person into killing rage).

In his final challenge relating to the sufficiency of the evidence, Appellant maintains that the jury erred in finding a specific intent to kill because he presented evidence to show that he was intoxicated at the time of the killing.[4] By

4. A showing of voluntary intoxication can negate the intent necessary for a conviction of first-degree murder and reduce the crime of murder

their verdict, however, the jury clearly disbelieved the evidence that Appellant introduced in an attempt to establish that his intoxication on the day of the stabbing prevented him from forming the specific intent required to support a conviction for first-degree murder. It is well settled that such credibility determinations are for the jury to resolve. *See Commonwealth v. Brown,* 538 Pa. 410, 437–38, 648 A.2d 1177, 1190–91 (1994) (credibility determinations are within exclusive province of jury as fact-finder); *Commonwealth v. Stoyko,* 504 Pa. 455, 464–65, 475 A.2d 714, 719–20 (1984) (evidence sufficiently supported first-degree murder conviction despite defense evidence that defendant was intoxicated and that his mind went "blank" at time of murder as jury was entitled to disbelieve defendant's evidence of intoxication).[5]

Thus, we find that Appellant's arguments challenging the sufficiency of the evidence are meritless. Instead, after an independent review of the record, we agree with the trial court that the Commonwealth presented sufficient evidence for the jury to find, beyond a reasonable doubt, that Appellant committed murder in the first degree when he repeatedly stabbed Ms. Jeffries to death. *See Commonwealth v. Thomas,* 552 Pa. 621, 632–34, 717 A.2d 468, 474 (1998) (use of deadly weapon on vital part of body is sufficient to establish specific intent to kill); *Commonwealth v. Domingquez,* 450 Pa. 223, 227, 299 A.2d 216, 217–18 (1973) (evidence supported first-degree murder conviction where defendant broke into victim's

from first to third degree. *Commonwealth v. Marshall,* 534 Pa. 488, 497–98, 633 A.2d 1100, 1104–05 (1993); *Commonwealth v. Stoyko,* 504 Pa. 455, 465, 475 A.2d 714, 720 (1984). However, the evidence must show that the defendant was unable to form the specific intent to kill because he was so overwhelmed or overpowered by drugs to the point of losing his faculties at the time the crime was committed. *Id.*

5. We also note that Ms. Jeffries' mother testified that Appellant did not appear in any way to be under the influence of anything when she talked to him before he broke into her home and stabbed Ms. Jeffries. N.T., 2/9/96, at 158–59. Further, the detective who processed Appellant when Appellant turned himself in also testified that Appellant did not appear to be incoherent in any way but rather "understood completely everything I asked him, he answered very clearly, and he seemed like he knew exactly what he was doing." N.T., 2/14/96, at 24.

home, entered bedroom where victim was sleeping, and stabbed victim thirty-one times).

For the same reasons advanced in his sufficiency claim, Appellant also argues that the verdict of first-degree murder was against the weight of the evidence. This claim also lacks merit.

A defendant's request for a new trial based on the argument that the verdict was against the weight of the evidence will only be granted when the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Spotz*, 716 A.2d at 584; *Commonwealth v. Brown*, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). Unless there are facts and inferences of record that disclose a clear abuse of discretion, the trial court's ruling that a verdict was not against the weight of the evidence must stand. *Id.*

Here, Appellant has failed to show that the trial court abused its discretion in determining that the verdict was not against the weight of the evidence. Given the facts in evidence in this case, this is not a verdict which shocks one's sense of justice. Accordingly, we reject Appellant's contention that the jury's verdict was against the weight of the evidence.

The next several claims of error raised by Appellant involve the alleged ineffectiveness of his trial counsel. To prevail on such a claim, Appellant must demonstrate that (1) the underlying claim is of arguable merit; (2) counsel's course of conduct was without a reasonable basis designed to effectuate his interest; and (3) that he was prejudiced by counsel's ineffectiveness, i.e. if not for counsel's ineffectiveness, there is a reasonable probability that the outcome of the trial would have been different. *Commonwealth v. Douglas*, 537 Pa. 588, 597, 645 A.2d 226, 230 (1994).

Appellant first maintains that counsel was ineffective because he failed to adequately consult with him prior to trial, allegedly meeting with him on only two or three occasions prior to the guilt phase of his trial. This claim fails.

514

In the first instance, it is well settled that, by itself, the amount of time an attorney spends consulting with his client before trial is not a legitimate basis for inferring the total extent of counsel's pre-trial preparation, much less the adequacy of counsel's preparation. *Commonwealth v. Bundy*, 491 Pa. 607, 608, 421 A.2d 1050, 1051 (1980). Moreover, Appellant fails to allege any issues that his counsel should have raised, or any beneficial information that his counsel would have discovered, had further pre-trial consultations been held. *See Commonwealth v. Porter*, 556 Pa. 301, 313–15, 728 A.2d 890, 896 (1999) (to establish ineffectiveness on basis of alleged inadequate pre-trial consultation, defendant must establish that counsel inexcusably failed to raise issues which, had they been raised, would have entitled him to relief). In fact, as the Commonwealth observes in its brief, Appellant's own testimony undermines his present claim that counsel was ineffective for failing to meet with him more frequently prior to the guilt phase of his trial. At trial, Appellant testified that he was so intoxicated that he was unable to remember anything that happened from more than seven hours before he killed Ms. Jeffries until sometime more than twelve hours after the killing occurred. In light of Appellant's claim that he could not recall the events surrounding the murder, counsel's ability to extract additional information from Appellant that would have been useful to his preparation for the guilt phase of trial was obviously limited. There can be no question that, given Appellant's version of the events, counsel reasonably pursued a defense of diminished capacity based on intoxication. Given these circumstances, Appellant has failed to establish that his ineffectiveness claim has arguable merit or that he was prejudiced by the number of times his counsel met with him prior to the guilt phase of his trial.[6]

---

**6.** Appellant alleges that his counsel's infrequent pre-trial consultations with him resulted in counsel being generally unprepared for the guilt phase of his trial. In support of his argument, Appellant cites to a portion of the record where defense counsel, after the start of trial but before the defense began presenting its evidence, stated that he had not yet had the opportunity to interview two potential defense witnesses. We agree with the Commonwealth, however, that the mere fact that counsel did not succeed in interviewing two potential defense witnesses

■ Appellant next alleges that counsel was ineffective for failing to conduct an adequate pre-trial investigation.[7] He contends that if counsel would have investigated further, he would have uncovered physical evidence that he and Ms. Jeffries had reconciled and spent time together in the days immediately before the murder. This claim is meritless.

In the first instance, the jury was aware that Ms. Jeffries and Appellant had apparently reconciled before the murder.

until after trial began but before the defense presented its case does not establish ineffectiveness on the part of counsel. *See Commonwealth v. Anderson*, 501 Pa. 275, 287, 461 A.2d 208, 214 (1983) (counsel's pre-trial preparation not sufficiently deficient so as to warrant new trial when defendant does no more than allege that counsel failed to interview "X,Y,or Z," and that testimony would have been helpful). Appellant also alleges that counsel's lack of preparation was reflected in his remark during his opening statement that something may have been administered to Appellant's drink at Cadillac Slim's, when Appellant did not testify that this is what occurred. When this remark is read in context, however, the clear import of counsel's opening statement and overall defense strategy was that Appellant was so drugged on the morning of the stabbing that he lacked the ability to form a specific intent to kill. Based on the circumstances of this case, including Appellant's own version of the events, counsel's pursuit of this defense cannot be considered unreasonable. *See Commonwealth v. Boyd*, 461 Pa. 17, 28, 334 A.2d 610, 616 (1975) (counsel's assistance deemed constitutionally effective once conclusion is reached that course chosen by counsel had some reasonable basis).

7. We note that Appellant's claims challenging the effectiveness of his trial counsel's pre-trial preparation are raised in light of the following exchange between Appellant and the trial court:

THE COURT: Mr. Mason, your counsel has indicated that he is about to rest your case in chief, specifically that there will be no further evidence forthcoming from the defense. Have you discussed this with your counsel?

APPELLANT: Yes.

THE COURT: And it is likewise your decision that there need not be presented any further evidence on the part of the defense?

APPELLANT: Yes.

THE COURT: Are you satisfied with the representation of your counsel up to this point in time?

APPELLANT: Yes.

THE COURT: Are there any witnesses that you wish to present that have not yet been presented?

APPELLANT: No.

THE COURT: Is there any outstanding investigation that you believe needs to be done before your counsel rests his case?

APPELLANT: No.

N.T., 2/14/96, at 10–11.

Appellant himself testified that he and Ms. Jeffries had spent time together in the days before the murder, had run errands together on the day before the murder and had gone to Cadillac Slim's together. Both Appellant's brother and mother indicated the same during their testimony. Even Ms. Jeffries' mother, as a witness for the Commonwealth, testified that Ms. Jeffries and Appellant had spent time together in the days before the murder and that Ms. Jeffries had gotten Appellant's name tattooed on her arm during this time. Likewise, Samantha Edens, Ms. Jeffries' friend and a witness for the Commonwealth, testified that Ms. Jeffries wanted Appellant to accompany her to Cadillac Slim's on the evening before the murder and that the two had spent time together before arriving at Cadillac Slim's. Thus, any evidence allegedly showing the reconciliatory nature of the relationship that Appellant contends should have been unearthed during pretrial investigation would have been merely cumulative of the testimony provided by both defense and Commonwealth witnesses. *See Commonwealth v. Hall*, 549 Pa. 269, 300, 701 A.2d 190, 206 (1997) (counsel not ineffective for failing to pursue cumulative evidence).

Appellant contends, however, that physical evidence of his and Ms. Jeffries' reconciliation in the days preceding the murder, including prison records showing Ms. Jeffries' visits to him and a motel receipt from the motel room he and Ms. Jeffries shared after he was released from prison, existed. He argues that such physical evidence, if located and introduced by counsel, would have corroborated the testimony regarding the reconciliation.[8] In making this argument, Appellant fails to recognize that even if the jury believed the evidence that Ms. Jeffries and Appellant had rekindled their relationship in the days before the murder, this would in no way have precluded the first-degree murder conviction. The jury could have reasonably concluded that Appellant, despite

**8.** Appellant claims that the Commonwealth presented evidence that Appellant stalked Ms. Jeffries and that without physical evidence to contradict the Commonwealth's theory, the jury only had one take on the nature of Appellant's and Ms. Jeffries' relationship to consider. These contentions are simply not supported by the record.

being on good terms with Ms. Jeffries in the days before the murder, later became angry, decided to kill Ms. Jeffries, and carried out the plan. Thus, this claim of ineffectiveness also fails to offer Appellant any basis for relief.

In a related claim, Appellant argues that he is entitled to a new trial on the basis of after-discovered evidence, which consists of letters written by Ms. Jeffries to him while he was in prison and a picture of Ms. Jeffries visiting him in prison. Appellant asserts, without explanation or elaboration, that because the letters demonstrate the couple's close and intimate relationship, Appellant's "acts could only have been the product of 'heat or passion' or intoxication." Appellant's Brief at 15. This claim is without merit.

After-discovered evidence can only be the basis for a new trial when it: (1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) is of such a nature and character that a different verdict will likely result if a new trial is granted. *Commonwealth v. Wilson,* 538 Pa. 485, 511, 649 A.2d 435, 448 (1994), *cert. denied,* 516 U.S. 850, 116 S.Ct. 145, 133 L.Ed.2d 91 (1995).

Here, Appellant fails to satisfy even the first prong of this test. The alleged after-discovered evidence consists of a picture and letters sent by Ms. Jeffries to Appellant while he was incarcerated. There is nothing to suggest that these items were not in the possession of, or accessible to, Appellant at the time of trial. Indeed, Appellant concedes that these items were in a cabinet in Appellant's home. *Id.* at 512, 649 A.2d at 448 (evidence defendant could have obtained at, or prior to, trial was not after-discovered); *Commonwealth v. Frey,* 512 Pa. 557, 564, 517 A.2d 1265, 1268 (1986) (after-discovered evidence is that which comes to light after trial, and about which defendant was unaware). Furthermore, as discussed above, the letters and picture allegedly showing the reconciliatory nature of Ms. Jeffries' and Appellant's relation-

518

ship are merely cumulative to other evidence that was presented at trial by both defense and Commonwealth witnesses. Although Appellant once again claims that these items would have corroborated his testimony that he was on good terms with Ms. Jeffries before the murder, the test for when a defendant is entitled to a new trial on the basis of after-discovered evidence specifically requires that the alleged after-discovered evidence not be merely cumulative *or* corroborative. Thus, even if it could be established that the alleged after-discovered evidence could not have been obtained at or prior to trial, this evidence was merely cumulative or corroborative of other evidence already presented at Appellant's trial. Thus, Appellant's after-discovered evidence claim does not entitle him to relief.

In his final claim, Appellant alleges that his trial counsel was ineffective for referring to the stabbing as a "heinous crime" during his guilt-phase closing argument and baldly asserts that this remark supported "the Commonwealth's efforts to obtain a first-degree murder conviction and death penalty" and "served to fix an unfavorable bias against [Appellant] in the minds of the jury." Appellant's Brief at 15.[9] This claim fails.

Appellant specifically challenges trial counsel's reference to the crime as "heinous" and the making of the following comment during his closing argument to the jury: "You have a very difficult task because you have to sort through the evidence of a rather heinous crime without emotion, without bias, without sympathy...." N.T., 2/14/96, at 62. However, Appellant fails to assert, much less demonstrate, that counsel

**9.** Appellant fails to adequately develop his argument on this issue and cites to absolutely no case law or other legal support for his bald assertion. An issue will be deemed to be waived when an appellant fails to properly explain or develop it in his brief. *See Commonwealth v. LaCava*, 542 Pa. 160, 188, 666 A.2d 221, 235 (1995) (failure to sufficiently explain claim waives consideration of claim); *Commonwealth v. Ragan*, 538 Pa. 2, 37, 645 A.2d 811, 828 (1994) (failure to elaborate on mere assertion renders claim waived). However, because this Court has observed a relaxed waiver rule in death penalty cases on direct appeal, we will address the merits of this issue. *Commonwealth v. Zettlemoyer*, 500 Pa. at 50 n. 19, 454 A.2d at 955 n. 19.

lacked a reasonable basis for the challenged comment or that the use of the comment prejudiced him. *See Commonwealth v. Carpenter*, 555 Pa. 434, 449–53, 725 A.2d 154, 162–63 (1999) (absent proof that there was no reasonable basis for course of conduct or that outcome of trial would have been different, defense counsel not ineffective for statements made during closing arguments).

Given Appellant's admission that he stabbed Ms. Jeffries and the other evidence of Appellant's guilt, it is clear that Appellant's counsel was left with few strategic options for defending his client against a first-degree murder charge. However, the record reflects that counsel's challenged comment was merely a reminder to the jury that it was the evidence, and not its emotions, that should control the outcome of the case. Read in context, the comment was clearly part of counsel's strategy to persuade the jury that despite the crime's gruesomeness, and despite the fact that Appellant had in fact stabbed Ms. Jeffries to death, the evidence showed that Appellant had done so only while he was too intoxicated to form the specific intent necessary for a first-degree murder conviction. Under the circumstances of this case, we fail to discern how this strategy was unreasonable. *See Commonwealth v. Marshall*, 534 Pa. 488, 509–10, 633 A.2d 1100, 1110–11 (1993) (counsel had reasonable basis for stating during closing argument that if victim had been his niece/sister he would want him to "fry too" so as to diffuse normal sense of vengeance that jury has); *Commonwealth v. Ly*, 528 Pa. 523, 533, 599 A.2d 613, 618 (1991) (counsel cannot be deemed ineffective for selecting one reasonable course from others that may be available). At the same time, given that the jury had already been exposed to the details of the crime Appellant conceded he committed, we cannot find that the verdict would have been different if counsel had not referred to the crime as "heinous" when reminding the jury to separate its emotions from the case and to focus on the evidence which, according to counsel, supported Appellant's defense of voluntary intoxication. Since Appellant has failed to establish that counsel had no reasonable basis for the challenged reference or that

he was prejudiced by that reference, Appellant's final claim of error also fails. *See Carpenter,* 555 Pa. at 449–53, 725 A.2d at 162–63.

Having concluded that Appellant's conviction for first-degree murder was proper, we are statutorily required to perform an automatic review of his sentence of death. Pursuant to this review, we must affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S. § 9711(h)(3).

 Upon review of the record, we conclude that the sentence of death was not the product of passion, prejudice or any other arbitrary factor, but rather, was based upon evidence properly admitted at trial. We also conclude that the evidence was sufficient to support the finding of at least one aggravating factor, that Appellant had a significant history of felony convictions involving the use or threat of violence to another person. *See* 42 Pa.C.S. § 9711(d)(9). Appellant's two previous convictions for robbery were placed before the jury during the penalty phase.

 In terms of our duty to determine whether Appellant's sentence is excessive or disproportionate, we have independently reviewed Appellant's sentence in light of the sentencing data compiled and monitored by the Administrative Office of the Pennsylvania Courts. We find that the sentence of death imposed upon Appellant is not excessive or disproportionate to the penalty imposed in similar cases.[10]

10. We note that on June 25, 1997, the Governor signed legislation that removes a proportionality review requirement from the death penalty

Accordingly, we affirm the verdict and sentence of death.[11]

statute. Act of June 25, 1997, No. 28 § 1 (Act 28). However, Act 28 is not applicable to the instant case as Appellant's death sentence was imposed prior to June 25, 1997. *See Commonwealth v. Gribble*, 550 Pa. 62, 87–91, 703 A.2d 426, 439–40 (1998) (provisions of Act 28 removing proportionality review requirement from death penalty statute do not apply retroactively to death sentences imposed before June 25, 1997)

11. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. 42 Pa.C.S. § 9711(i).