**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Robert COBBS, Appellee.**

Superior Court of Pennsylvania.

Submitted June 5, 2000.
Filed Aug. 9, 2000.
Reargument and Reconsideration
Denied Oct. 6, 2000.

Michael W. Streily, Asst. Dist. Atty., Pittsburgh, for appellee.

Mark H. Rubenstein, Pittsburgh, for appellee.

BEFORE: McEWEN, President Judge, DEL SOLE and OLSZEWSKI, JJ.

DEL SOLE, J.:

¶ 1 The Commonwealth appeals the order granting Appellee a new trial. Appellee was convicted by a jury of burglary, escape, and resisting arrest and was sentenced to an aggregate term of 54 months to 12 years' imprisonment. This court affirmed the judgment of sentence and the Supreme Court denied appeal. *Commonwealth v. Cobbs*, 698 A.2d 1344 (Pa.Super.1997), *appeal denied*, 555 Pa. 716, 724 A.2d 933 (1998). Appellee then filed a counseled petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541–9546. In his petition, Appellee alleged after-discovered evidence and ineffective assistance of counsel. Following a hearing, the PCRA court granted relief and we now affirm.

¶ 2 The relevant facts establish that in the early morning hours police received a call from Bernard O'Neil reporting a prowler in his neighborhood. O'Neil said that he witnessed a prowler wearing white gloves break into a neighbor's house who was on vacation. When police arrived, two officers entered the house and discovered Appellee hiding in the closet of a lighted second floor bedroom. As the police attempted to handcuff Appellee, he dove he-

adfirst through a closed window and fell 21 feet to the ground. Officers Foley and Rose, back-up officers who were stationed outside of the residence, witnessed someone jump from the window, but failed to apprehend him. Two hours later, Officers Foley and Rose found Appellee hiding under a tarpaulin in a nearby yard. A physical struggle ensued during which Appellee received various injuries before he was taken into custody.

¶ 3 After his conviction and while his appeal was pending, Appellee brought a civil action in federal court against the arresting officers. The identification testimony of Officers Foley and Rose during their depositions for the civil action differed from the identification testimony they offered at Appellee's criminal trial. The PCRA court granted a new trial based on the differences in testimony.

¶ 4 Our standard of review of an order granting or denying post-conviction relief is limited to examining whether the court's determination is supported by evidence of record and whether it is free of legal error. *Commonwealth v. Williams*, 496 Pa. 486, 437 A.2d 1144, 1146 (1981). Our task is not to engage in a *de novo* evaluation of testimony. *Id.* After-discovered evidence is a basis for a new trial only if it: (1) has been discovered after the trial and could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeachment purposes; and (4) is of such a nature and character that a different verdict will likely result if a new trial is granted. *Commonwealth v. Valderrama*, 479 Pa. 500, 388 A.2d 1042 (1978).

¶ 5 First, we find that the PCRA court's determination was supported by evidence of the record. The court based its decision on the following differences in the testimony of Officers Thomas Foley and Edward Rose. At trial Officer Foley identified the defendant as the person whom he saw on the right side of the house. He also said that he saw the **defendant** pick himself up from the ground and run into the woods. N.T., 8/2/95, at 187–191. In his deposition, he testified that he did not know if he saw the actor's face; however, he observed **the actor** get up and run into the woods. He also testified that he did not know if based upon his observation he could identify the defendant; rather, he identified the defendant based upon seeing him later. Deposition Transcript, at 40–50; Findings of fact and order of court, 10/19/99, at 2–3.

¶ 6 Officer Rose stated at trial that he was stationed on the side of the house. He said that he was able to identify the actor as he was chasing him down the street immediately after the actor jumped from the window. Rose described the actor as a black male in dark clothing, with a bald head, who was dirty and bleeding. N.T., 8/2/95, at 156–158. However, in his deposition, Rose stated that he watched the back of the house and indicated that at the time he chased the actor down the street he did not know the actor's race and he could not describe the actor's body at all. Deposition Transcript, at 15–16, 33; Findings of fact and order of court, 10/19/99, at 3.

¶ 7 Second, we find that the PCRA court's determination that the criteria for after-discovered evidence has been met is free of legal error. Judge Raymond Novak presided over the PCRA hearing and also over Appellee's criminal trial. We, therefore, extend great deference to the PCRA court's finding that the evidence from the deposition testimony of Officer Foley and Rose warrants a new trial.

¶ 8 Initially, the evidence, discovered in a deposition after the criminal trial concluded, could not have been discovered prior to or at the trial. We note that the officers who found Appellee inside of the house identified him as the actor; however, Judge Novak had the opportunity to listen to the testimony and observe the demeanor of the witnesses at trial. He

has a better understanding of the testimony upon which this case turned. Accordingly, we will not disturb the finding of the PCRA court that the evidence was not cumulative, it was not being used solely to impeach credibility, and it would likely compel a different verdict. We find no error in the court's ruling as we recognize that a positive identification of Appellee as he jumped from the window is important because Appellee claims that he was not the actor and because he was not apprehended until two hours after the incident. Finding that the evidence is of record and no legal error exists, we affirm the PCRA court's award of a new trial.

¶ 9 Order affirmed.

¶ 10 Judge OLSZEWSKI files a dissenting opinion.

OLSZEWSKI, J., dissenting:

¶ 1 While the expression of the majority view provides a persuasive analysis and sound rationale, I am obliged to differ. Because I believe that the "newly discovered evidence" is not nearly material enough to warrant a new trial, I respectfully dissent.

¶ 2 The majority correctly recites the general rule that

> [a]fter-discovered evidence can only be the basis for a new trial when it: (1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) is of such a nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Mason*, 559 Pa. 500, 741 A.2d 708, 717 (1999), *cert. denied*, —— U.S. ——, 121 S.Ct. 81, —— L.Ed.2d —— (2000). Further, the majority aptly describes our standard of review as being limited to whether the PCRA court's determination was " 'supported by evidence of record.' " *Commonwealth v. Bronsh-*

*tein*, 561 Pa. 611, 752 A.2d 868, 870 n. 4 (2000) (quoting *Commonwealth v. Morales*, 549 Pa. 400, 701 A.2d 516, 520 (1997)).

¶ 3 A close examination of the record indicates that the discrepancies in testimony are not nearly as egregious as the PCRA court implies. First, my reading of the record indicates that Officer Rose testified at both the trial and during his deposition that he was not able to identify appellee "immediately after the actor jumped from the window" as the majority opinion states. Majority Opinion, at 934. At trial, Officer Rose testified as follows:

Q: Did you see the person that came out the window?

A: *Not at that time.*

What I did, I was familiar with the area. And I began to run down Viola to Milroy Street.

At that point as I was going down Milroy Street, an individual came running out of the office—I mean out of the woods.

Q: And did you get a look at that individual?

A: Yes, I did.

N.T. Trial, 8/2/95, at 158 (emphasis added). The officer then identified appellee as being that individual. *See id.* His deposition testimony was remarkably similar:

Q: You don't have a clue, do you? All you know is a body came out of that window; you can't describe it at all, can you?

A: No.

Q: All right. So the body goes into the woods?

A: Yes.

Q: What did you do?

＊   ＊   ＊

A: I ran down the street to head off the person running through the woods.

＊   ＊   ＊

Q: What did you do as you moved down the street?

A: Well, as I ran down the street, the individual ran out in front of me out of the woods.

\* \* \*

Q: Were you able to tell at that point whether it was a white man or a black man?

A: Yes.

N.T. Deposition of Deputy Sheriff Edward Rose, III, 4/29/97, at 33, 34, 36, 43. Officer Rose proceeded to describe the individual's features. *See id.* at 43–44. The only contradiction in his testimony was that at trial he testified that he was stationed at the side of the building, *see* N.T. Trial, at 156, and during his deposition he testified that he was at the back of the building, *see* N.T. Deposition, at 16. Significantly, he testified at both proceedings that after being radioed that the suspect was in custody, he went to the *front* of the dwelling where he observed the suspect crash through the window. *See* N.T. Trial, at 156–57; N.T. Deposition, at 22–23. The officer's inconsistent statements about where he was stationed *before* the suspect fell through the window surely has no bearing in his ability to identify the perpetrator as appellee.

¶ 4 Further, the majority mischaracterizes Officer Foley's deposition testimony as being significantly different from his trial testimony. At trial, the officer testified that, after the crash, "[he] saw the defendant picking himself up from the ground and running into the woods." N.T. Trial, at 191. In his deposition testimony two years after trial, Officer Foley testified that he did not *recall* if he saw the suspect's face after the fall. *See* N.T. Deposition of Officer Thomas Foley, 6/16/99, at 44. While certainly different from what he said at trial, this testimony would only be useful to impeach the officer's testimony regarding whether he could identify appellee as the individual who crashed through the window. As stated above, this does not provide appellee relief under the PCRA. *See Mason,* 741 A.2d at 717.

¶ 5 Finally, the majority's emphasis on the testimony of two officers who may or may not have been able to identify appellee in a few brief seconds before he allegedly ran into the woods ignores the testimony of Officers Daniel Pratt and Derick Long who were in the building attempting to apprehend the intruder. They both unambiguously testified that they caught appellee in a closet and got a clear view of his face and identified him in the courtroom. *See* N.T. Trial, at 36 (testimony of Daniel Pratt) ("A: At this time the actor stood straight up from the closet, looked me and Officer Long right in the face. Q: So you got a good look at him? A: Very good."); N.T. Trial, at 117 (testimony of Derick Long) ("Q: Were you able to see this person? A: Yes. I looked at him eye to eye."). Even assuming, *arguendo,* that Officers Rose and Foley's deposition indicated that they did not tell the truth at appellee's trial, given this uncontradicted testimony, I believe that this evidence does not "compel a different outcome if it had been introduced at trial." *Commonwealth v. Small,* 559 Pa. 423, 741 A.2d 666, 673 (1999), *cert. denied,* — U.S. —, 121 S.Ct. 80, — L.Ed.2d — (2000). Because I feel that the trial court's determination was not supported by evidence of record, I must dissent.