J-A27033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JASON  GLINKA | |
| Appellant | No. 1906 EDA 2015 |

Appeal from the Judgment of Sentence June 22, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0012559-2013

BEFORE: PANELLA, LAZARUS, FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED FEBRUARY 28, 2017**

Appellant, Jason Glinka, appeals from his judgment of sentence of ten to twenty years' imprisonment, followed by five years' probation, imposed after a jury found him guilty of attempted murder[1] and possession of an instrument of crime ("PIC").[2]  Appellant argues that the evidence is insufficient to sustain his convictions because the Commonwealth failed to prove the requisite *mens rea* and failed to disprove self-defense beyond a reasonable doubt.  We affirm.

The trial court summarized the evidence against Appellant as follows:

> On August 12, 2013, at approximately 8:00 p.m., Scott Steigleman ("Complainant") encountered Regina Burkle, his ex-girlfriend, as he walked around the corner to get

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901(a), 2502(a).

[2] 18 Pa.C.S. § 907(a).

cigarettes and drinks from his mother's house, located at 2938 Belgrade Street. Complainant and Ms. Burkle had an on-and-off relationship since 2011 and were engaged in 2013. They continued to speak frequently even after they ended their relationship. On that night, the Complainant testified that he was shocked to see Ms. Burkle because he thought she was out of town. Ms. Burkle brushed past him down the street when he asked her what she was doing in his neighborhood. The Complainant followed Ms. Burkle into the pizza shop and demanded an answer. Five minutes later, a pizza shop employee asked Ms. Burkle if the Complainant was bothering her and told the Complainant to leave. Ms. Burkle called [Appellant] to pick her up after the Complainant repeatedly refused to leave.

As the Complainant walked out of the pizza shop, he encountered [Appellant], whom he had known for roughly two years.[3] [Appellant] and the Complainant previously had an altercation on Facebook over [Appellant] romantically pursuing Ms. Burkle while the Complainant tried to reconcile with her. Complainant punched [Appellant] after [Appellant] pushed him out of the way, causing [Appellant] to fall.[4] After [Appellant] regained his footing, the Complainant struck him twice more, sending him to the ground. [Appellant] stood up again and struck the Complainant with a knife near his elbow and then once more on his shoulder. He jumped on top of the Complainant, straddled him, and stabbed him numerous times, while the Complainant tried to block the strikes. Complainant testified that he was stabbed [fourteen] times. Ms. Burkle remained inside the pizza shop and testified that she did not witness the fight.

The Complainant received help from the pizza shop employee to his aunt's house on Cedar Street, as he was

---

[3] Appellant testified that he found Complainant exiting the pizza parlor and walked toward him, "kn[owing] that something was . . . going to happen." N.T., 2/2/15, at 19-20; *see also id.* at 21-24 (similar testimony).

[4] A crowd gathered around Appellant and Complainant to watch the fight. *Id.* at 21-40. Appellant testified that the crowd encouraged Complainant and was hostile toward him. *Id.*

unable to walk home. Officer Kirk McKee responded to a radio call for [a] stabbing and arrived at the Complainant's aunt's house, where he found the Complainant bleeding on the ground and generally unresponsive. Based on the Complainant's condition, he immediately placed the Complainant in his patrol car and rushed him to Temple University Hospital.

The Complainant's medical records indicate that he had multiple stab wounds, including a wound to the back of his scalp, seven wounds to the left back, one stab wound to his left elbow, and one stab wound to the left shoulder. An MRI test revealed that the Complainant had a blood clot, placing pressure to his spinal cord, which caused his inability to move his lower extremities and suffer dysfunction of his urinary tract. Complainant further suffered a fracture to a part of his spine and had fluid in his chest cavities. Subsequent blood testing revealed that the Complainant had Xanax, oxycodone, cocaine and marijuana in his system at the time of the stabbing. Complainant spent [seven to ten] days in the hospital following the stabbing and an additional month at a rehabilitation facility. Due to his inability to walk and control his bowels as a result of this incident, [Complainant] is unable to work and play with his children.

The Complainant later gave a statement to the police, but refused to sign his name to the document. Complainant initially only gave a description of the person who stabbed him, but later provided the name "Jason" to the detectives. In addition, the Complainant identified [Appellant] by picture but refused to sign the picture in fear of retaliation.

Trial Ct. Op., 1/11/16, at 2-4 (record citations omitted).

Following a three-day trial, the jury found Appellant guilty of the aforementioned crimes. On June 22, 2015, the trial court imposed sentence. On June 24, 2015, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two arguments on appeal, which we re-order for our review:

> 1. Was not the evidence also insufficient for conviction of attempted murder, insofar as the Commonwealth failed to prove that [Appellant] had the requisite *mens rea*?
>
> 2. Was not the evidence insufficient to prove the offenses of attempted murder and possession of an instrument of crime, insofar as self-defense was raised, and the Commonwealth failed to disprove self-defense beyond a reasonable doubt?

Appellant's Brief at 3.

Appellant first argues that the evidence was insufficient to sustain his conviction for attempted murder, because the Commonwealth failed to prove that he harbored specific intent to commit attempted murder. We disagree.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact [,] while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

- 4 -

*Commonwealth v. Talbert*, 129 A.3d 536, 542-43 (Pa. Super. 2015) (citation omitted), *appeal denied*, 138 A.3d 4 (Pa. 2016).

A person is guilty of attempted murder when he takes a substantial step toward the commission of a killing with the specific intent to commit that act. 18 Pa.C.S. §§ 901(a), 2502(a); *Commonwealth v. Blakeney*, 946 A.2d 645, 652 (Pa. 2008). The jury may find specific intent to kill "from a defendant's words or conduct or from the attendant circumstances, together with all reasonable inferences therefrom, and may be inferred from the intentional use of a deadly weapon on a vital part of the body of another human being." *Commonwealth v. Hornberger*, 270 A.2d 195, 198 (Pa. 1970).

Viewed in the light most favorable to the Commonwealth, the evidence establishes that Appellant had the specific intent to kill Complainant. During a fistfight, Appellant pulled a knife and stabbed Complainant in the back, collapsing Complainant's lung, causing his chest cavities to fill with fluid, and resulting in a blood clot that permanently paralyzed his legs and impaired function of his urinary tract and bowels. When Complainant fell to the ground, Appellant leaped on top of his prone body and stabbed him in the back of the head and six more times in the back. Complainant would have died had he not undergone surgery immediately.

The sheer number of times that Appellant stabbed Complainant in his back and in the back of his head established Appellant's specific intent. *Cf.*

***Commonwealth v. Mason***, 741 A.2d 708, 712-15 (Pa. 1999) (concluding evidence was sufficient to establish specific intent to commit first degree murder where defendant stabbed victim eighteen times in head, neck, chest, back, abdomen, arm, groin and leg, despite defendant's claim of intoxication), *abrogated on other grounds,* ***Commonwealth v. Freeman***, 827 A.2d 385 (Pa. 2003); ***Commonwealth v. Cain***, 503 A.2d 959, 966-67 (Pa. Super. 1986) (holding specific intent to kill established where defendant stabbed victim thirteen times, including six in his back, twice damaging victim's internal organs).

In his second argument, Appellant contends that the Commonwealth failed to disprove self-defense beyond a reasonable doubt. Appellant insists that (1) Complainant provoked the fight, (2) Appellant reasonably believed that he had to use deadly force to protect himself from serious bodily injury,[5] and (3) Appellant had no duty to retreat under the circumstances. For the reasons that follow, we conclude that no relief is due.

---

[5] The Commonwealth filed an application for post-submission communication to contest a point made by Appellant's counsel at oral argument before this Court—specifically, that Appellant suffered a broken nose and actually sustained serious bodily injury giving rise to his claim of self-defense. Although we agree with the Commonwealth that Appellant did not raise this point in his brief or at trial, we find this point immaterial to our discussion. We discern no basis upon which to conclude that Appellant failed to raise the issue of self-defense. Because our analysis focuses on the evidence rebutting the claim of self-defense, we dismiss the Commonwealth's application as moot.

It is well settled that the Commonwealth bears the burden of disproving a self-defense claim beyond a reasonable doubt. ***Commonwealth v. Houser***, 18 A.3d 1128, 1135 (Pa. 2011). A claim of self-defense

> requires evidence establishing three elements: (a) [the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) [the defendant] was free from fault in provoking the difficulty which culminated in the [victim's injuries]; and (c) [the defendant] did not violate any duty to retreat.

***Commonwealth v. Mouzon***, 53 A.3d 738, 740 (Pa. 2012) (citations and quotation marks omitted). Serious bodily injury is "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. "Although the Commonwealth is required to disprove a claim of self-defense . . . a jury is not required to believe the testimony of the defendant who raises the claim." ***Commonwealth v. Carbone***, 574 A.2d 584, 589 (Pa. 1990) (citation omitted).

> A number of factors, including whether complainant was armed, any actual physical contact, size and strength disparities between the parties, prior dealings between the parties, threatening or menacing actions on the part of complainant, and general circumstances surrounding the incident, are all relevant when determining the reasonableness of a defendant's belief that the use of deadly force was necessary to protect against death or serious bodily injuries . . . No single factor is dispositive.

> Furthermore, a physically larger person who grabs a smaller person does not automatically invite the smaller person to use deadly force in response.

*Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa. Super. 2014) (citations omitted).

Viewed in the light most favorable to the Commonwealth, the evidence disproves Appellant's arguments relating to self-defense. First, Appellant asserts that Complainant ambushed him, but the evidence demonstrates that Appellant travelled to the pizza parlor to confront Complainant, found Complainant as he exited the pizza parlor, and walked toward him, "kn[owing] that something was . . . going to happen." *See* N.T., 2/2/15, at 19-20.

Next, Appellant emphasizes that Complainant knocked Appellant down twice near the beginning of their fistfight. However, Appellant unreasonably escalated the fight by twice stabbing Complainant—who was unarmed—while Complainant was standing. Furthermore, Appellant straddled Complainant and stabbed him many more times after Complainant collapsed to the ground. *See Smith*, 97 A.3d at 789 (noting Commonwealth disproved self-defense beyond reasonable doubt where defendant unreasonably escalated altercation by attacking victim with box cutter after victim pushed him). Accordingly, the jury could reasonably infer that Appellant did not reasonably fear for his life and used more force than was necessary to defend himself from Complainant's punches. *See Commonwealth v.*

*Truong*, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*) (concluding Commonwealth negated element of self-defense where defendant used "more force than necessary" to defend himself; defendant "was at least seven inches taller than victim, stabbed victim [nineteen] times all over front and back of torso, and wounds were so deep that victim's intestines protruded from his abdomen"); *Commonwealth v. Gillespie*, 434 A.2d 781, 784 (Pa. Super. 1981) (rejecting claim of self-defense when defendant used greater force than was reasonably necessary to protect against death or serious bodily injury during fight on public sidewalk by striking victim in head twice with baseball bat and kicking prostrate victim in head).

Third, Appellant argues that he had no duty to retreat during the fight, because he reasonably believed that he could not retreat with complete safety because he was in the heat of battle amidst hostile onlookers and reasonably believed that he was fighting for his life. The evidence shows, however, that Complainant collapsed to the ground when Appellant stabbed him. It was reasonable for the jury to conclude that Appellant could have retreated at this point with complete safety—but in violation of his duty to retreat, he chose to continue the encounter, jump on top of Complainant, and stab him multiple additional times.

Lastly, Appellant's flight after the stabbing established his consciousness of guilt, thereby refuting his claim that he reasonably believed that he had to stab the prone victim repeatedly in the back to protect

himself. *See, e.g.*, *Commonwealth v. Spotz*, 870 A.2d 822, 825 n. 10 (Pa. 2005) (reiterating that evidence of defendant's flight and/or concealment following crime is admissible to establish an inference of consciousness of guilt).

In sum, when we review the evidence in the light most favorable to the Commonwealth, we are constrained conclude that the evidence was sufficient to support the verdict.[6]

Judgment of sentence affirmed. Application for post-submission communication dismissed as moot.

---

[6] We recognize that other factfinders might have concluded that Complainant was equally to blame for the tragic outcome of this brawl or that Appellant should not be punished for his conduct due to the rapid and explosive nature of the events. Unfortunately for Appellant, the test is not what other juries might have done but whether the evidence was sufficient for **this jury** to reach its verdict.

Moreover, in his Pa.R.A.P. 1925(b) statement of matters complained of on appeal, Appellant contended that the trial court erred in sustaining the Commonwealth's objections to Appellant's testimony about Complainant's reputation for violent behavior and to defense counsel's reference to Complainant's violent reputation during closing argument. However, we cannot address these issues because Appellant did not raise them in his appellate brief. *See Commonwealth v. Furrer*, 48 A.3d 1279, 1281 n. 3 (Pa. Super. 2012) (noting that under Pa.R.A.P. 2119(a), issues not developed in appellate brief with pertinent "discussion" and "citation of authorities" are waived).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017