J-S40036-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LOUIS E. ALEXANDER | : | |
| | : | |
| Appellant | : | No. 1404 EDA 2016 |

Appeal from the Judgment of Sentence December 18, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005336-2013

BEFORE: OTT, DUBOW, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                    **FILED JULY 10, 2017**

Louis E. Alexander appeals from the judgment of sentence imposed on December 18, 2015, in the Court of Common Pleas of Philadelphia County. A jury convicted Alexander of murder of the first degree, carrying a firearm without a license, and possessing an instrument of crime.[1] The trial court sentenced Alexander to life imprisonment without parole on the murder charge and two concurrent terms of imprisonment of one to two years each for the remaining offenses. In this appeal, Alexander challenges the sufficiency of the evidence and the weight of the evidence. Based upon the following, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a), 6106(a)(1), and 907(a).

The trial court has aptly summarized the background of this case:

[Alexander] was arrested on October 17, 2012, and charged with murder, possessing the instruments of a crime, recklessly endangering another person and violations of the Uniform Firearms Act. [Alexander] was bound over for court on all charges after a preliminary hearing on January 31, 2013. A jury trial was held from August 10, 2015 through August 17, 2015 at which time [Alexander] was convicted of [murder of the first degree, carrying a firearm without a license, and possessing an instrument of crime] and subsequently sentenced to life in prison without parole. CP-51-CR-0001306-2013 was *nolle prossed* on December 18, 2015.

****

On May 4, 2012, Daquan Windley was standing outside of a bar at 15th and Huntingdon Street in Philadelphia. Mr. Windley walked across the street to the trunk of a vehicle where a couple of people had gathered. Louis Alexander came across the street and shot Windley several times. Windley ran down the street and [Alexander] chased him and shot him two more times. Daquan Windley collapsed on a porch. The police responded, and upon finding Windley they scoop[ed] him up and t[ook] him to Temple Hospital. Fourteen days later Windley succumbed to his wounds and died. Although a complaint was filed on June 13, 2012, [Alexander] was not apprehended until October 17, 2012. …

Trial Court Opinion, 10/27/2016, at 1–2, 3.

Following his jury conviction on August 18, 2015, Alexander was sentenced on December 18, 2015. A motion for reconsideration of sentence was filed on December 22, 2015, and an amended post-sentence motion

was filed on December 28, 2015. Both motions were denied by operation of law on April 20, 2016, and this appeal followed.[2]

Alexander first challenges the sufficiency of the evidence to sustain his convictions. He asserts "the evidence presented was insufficient to sustain the verdict where witness statements were inconsistent, unreliable and failed to prove [Alexander's] participation in the alleged crime." Alexander's Brief at 11.

Alexander states he and the victim were friends, and asserts the video surveillance of the incident did not show the actual shooting. *Id.* Moreover, he claims that "although motive is not necessary for the Commonwealth to prove its case, it is unarguably a significant factor to consider [] that the edited video surveillance did not show that the Decedent and [Alexander], while inside Big Al's Spot Bar, embraced each other immediately prior to the incident."[3] *Id.* Alexander points out that the victim told police he did not know who shot him. *Id.* at 11-12. Alexander also relies on his own trial testimony that he did not shoot the victim, that he did not have a gun, and that a man named Hock reached into the trunk of a car, pulled out a gun,

---

[2] Alexander timely complied with the order of the trial court to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

[3] The parties stipulated that the edited video "mistakenly does not show [Alexander] and [the victim] in the bar hugging. That is agreed that that happened and it is not shown in the video." N.T., 8/17/2015, at 48.

and then Alexander heard shots. *Id.* at 12. Additionally, Alexander states he testified he went to the victim's funeral service.

Alexander claims that the surveillance video did not show him with a gun and indicated the shooting occurred in the street, which is inconsistent with the fired cartridge casings being found on the sidewalk. *Id.* Finally, Alexander asserts Tyree[4] Smith, who initially gave a statement to police indicating he witnessed the incident, retracted this statement at trial and testified that he did not know who killed the victim, and did not see what occurred. *Id.* Alexander relies on Smith's testimony that he lied to detectives because he wanted "to get out of there," and that "he's been a liar all his life." *Id.*, *citing* N.T., 8/12/2015, at 67, 70.

Our standard of review of a sufficiency claim is well settled:

> In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. We may not weight the evidence and substitute our judgment for the fact-finder. To sustain a conviction, however, the facts and circumstances which the Commonwealth must prove must be such that every essential element of the crime is established beyond a reasonable doubt.

---

[4] The record reflects the witness's name as "Tyreeke Smith." *See* N.T., 8/12/2015, at 2.

> Lastly, the finder of fact may believe all, some or none of a witness's testimony.

***Commonwealth v. Priest***, 18 A.3d 1235, 1239 (Pa. Super. 2011) (citations omitted).

Based on our review, we conclude the arguments of Alexander present no basis upon which to disturb the determination of the trial court that the evidence was sufficient to support Alexander's convictions. Here, the trial court analyzed the Commonwealth's evidence, as follows:

> The evidence in this case was substantial and overwhelming, in fact the murder is on videotape! There were numerous surveillance cameras in, as well as outside the bar at 15th and Huntington Streets. The jury was able to see [Alexander] as well as the decedent in the bar and when each of them left the bar. Windley stands outside of the bar and Alexander goes to the corner where a car pulls up and hands [Alexander] an object which is not discernable in the video. Alexander then crosses the street to where the decedent was standing with a few other people and shoots Windley several times. [Alexander] continues to shoot the decedent as he runs up the street. (N.T. 8-17-2015, pp. 8-13).
>
> In addition to the tape-recording of the murder, the parties stipulated that the individual in the video wearing the tan hooded jacket and blue jeans was [Alexander]. This is the individual [who] is shown inside and outside of the bar, crossing the street and approaching the decedent immediately prior to the gunshots, and running after the decedent with his arm extended while hearing more shots. (N.T. 8-11-2015, pp. 18, 79-80; 83-88, 8-12-2015, p.2). The medical examiner testified as to the cause of death and that the wounds received by the decedent were consistent with the video. (N.T. 8-11-2015, pp. 83-88). Tyreeke Smith was at the scene of the murder shooting dice, and although when he testified he claimed not to recall what happened that evening, his statement on the morning following the murder declares that he saw "Louie" go up to the

- 5 -

decedent and shoot Windley, then run back, past Smith with a gun in his hand. (N.T. 8-12-2015, pp. 18-20, 23-24). Reginald Green also testified that he was outside of the bar at the time of the shooting and although he did not see the shooting, he did see [Alexander] running away after the crime. (N.T. 8-12-2015, pp. 106-109). Detective Marano told the jury about interviewing Tyreeke Smith following the incident and how that eyewitness had stated he had seen the entire incident including [Alexander] walking up to the decedent and firing four or five shots and then as Windley runs away, Alexander chasing after him and firing three or four more shots. (N.T. 8-12-2015, pp. 121-123). The evidence was not only sufficient, it was overwhelming.

Trial Court Opinion, 10/27/2016, at 4–5. We agree with the trial court's analysis of the evidence presented to the jury, and add the following comments to address Alexander's argument.

As already stated, the jury is free to believe all, some or none of a witness's testimony. **Priest, supra**, 18 A.3d at 1240. The fact that the victim and Alexander embraced a short time before the shooting was presented to the jury by way of stipulation.[5] The jury, however, apparently believed the Commonwealth's evidence.

Furthermore, the fact that Alexander denied shooting the victim and Smith recanted his statement to police does not render the evidence insufficient. The Pennsylvania Supreme Court has held that the prior inconsistent statements of witnesses who recanted at trial constituted sufficient evidence to support the defendant's murder conviction when the

---

[5] **See** Footnote 3, **supra**.

witnesses testified at trial and were subject to cross-examination before a factfinder that could reasonably credit the prior statements over the witnesses' in-court recantations. **Commonwealth v. Brown**, 52 A.3d 1139, 1168 (Pa. 2012). Here, the jury observed the testimony of Smith, and was free to credit Smith's initial statement to police rather than his recantation. **See Brown, supra**, at 1169 ("[I]t is the finder-of-fact's ability to make in-person observations of the witness at the time of trial, as he or she explains the reasons for the prior statement, which is most crucial to its assessment of the witness's credibility."). Accordingly, for all the above reasons, Alexander's first argument fails.

The second issue raised by Alexander is framed as a challenge to the weight of the evidence. Alexander argues "Smith testified that he lied to members of the Philadelphia Police Department in his initial statement and that he had been a liar all his life." Alexander's Brief at 15. Alexander maintains: "When Smith's testimony is viewed in light of the edited video surveillance tapes, which did not show [Alexander] with a gun, and in light of the ballistics evidence showing fired cartridge casings on the sidewalk not in the street, the jury's verdict is based upon mere speculation and has no factual support." **Id.** Alexander also again points out that he testified he was a friend of the decedent, as demonstrated by stipulation that missing

video footage showed the decedent and Alexander hugging each other inside

Big Al's Spot immediately before the shooting.  ***See id.***

Our review of a weight claim is well settled:

The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. ***Commonwealth v. Cousar***, 593 Pa. 204, 928 A.2d 1025, 1033, 1036 (Pa. 2007). Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence." ***Commonwealth v. Rivera***, 603 Pa. 340, 983 A.2d 1211, 1225 (Pa. 2009). An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." ***Commonwealth v. Champney***, 574 Pa. 435, 832 A.2d 403, 408 (Pa. 2003). Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice." ***Commonwealth v. Diggs***, 597 Pa. 28, 949 A.2d 873, 879 (Pa. 2008).

***Commonwealth v. Cash***, 137 A.3d 1262, 1270 (Pa. 2016), *cert. denied by*

***Cash v. Pennsylvania***, 137 S. Ct. 1202 (Feb. 27, 2017).

Here, the trial court rejected Alexander's weight claim, stating:

A claim that the verdict was contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. ***Commonwealth v. Widmer***, 560 Pa. 308, 744 A.2d 745 (Pa. 2000). "[T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Marks***, 704 A.2d 1095, 1098 (Pa. Super. 1997), citing ***Commonwealth v. Simmons***, 541 Pa. 211, 229, 662 A.2d 621, 630 (1995). A defendant's request for a new trial based on the argument that the verdict was against the weight of the evidence will only be granted when the verdict is so contrary to the evidence as to make the award of a new trial

- 8 -

imperative. ***Commonwealth v. Mason***, 559 Pa. 500, 513, 741 A.2d 708, 715 (1999); ***Commonwealth v. Auker***, 545 Pa. 521, 541, 681 A.2d 1305, 1316 (1996). Where the record adequately supports the trial court, the court has acted within the limits of its discretion. ***Commonwealth v. Clay***, 619 Pa. 423, 64 A.3d 1049 (2013); ***Commonwealth v. Brown***, 538 Pa. 410, 648 A.2d 1177 (1994).

As was noted earlier, the evidence in this case was compelling, substantial and overwhelming. The defendant is videotaped inside the bar, leaving and going to the corner where he retrieves an object from men in a vehicle, crossing over the street to where the decedent was standing at which time you hear four or five gunshots, then chasing the decedent down the street with his arm outstretched as you hear three or four more gunshots. An eyewitness gives a statement within hours of the murder identifying Alexander as the murderer and a second witness identifies the defendant as running away immediately following the homicide. Accordingly, the verdict was not so contrary to the evidence as to shock one's sense of justice and therefore, the judgment must stand.

Trial Court Opinion, 10/27/2016, at 5−6.

The trial court applied the correct standard to this weight claim, reviewed the evidence, and determined the jury's verdict was consistent with the evidence presented at trial. While Alexander seeks to discredit Smith's initial statement to police based on Smith's testimony he lied to police, the jury was free to accept Smith's prior inconsistent statements and reject his recantation. As this Court recently stated in addressing a comparable claim:

Although Appellant discounts Fowler and Graham's statements to police as they later recanted at trial, the jury was free to credit the witnesses' prior inconsistent statements over their recantations. In a similar case, the Pennsylvania Supreme Court

held that the prior inconsistent statements of witnesses who recanted at trial constituted sufficient evidence to support the defendant's murder conviction when the witnesses testified at trial and were subject to cross-examination before a factfinder that could reasonably credit the prior statements over the witnesses' in-court recantations. ***Commonwealth v. Brown***, 617 Pa. 107, 154, 52 A.3d 1139, 1168 (2012).

Although Graham and Fowler recanted their accounts of the crime at trial, they were subject to cross-examination before the jury and presented explanations for making the inconsistent statements. … The jury had a full opportunity to observe the witnesses and assess the credibility of their explanations for the recantations.

***Commonwealth v. Brown***, 134 A.3d 1097, 1104–1105 (Pa. Super. 2016). Likewise, in this case, Smith testified at trial and was subject to cross-examination, and the jury was able to make credibility determinations regarding Smith's recantation and his initial statement.

Furthermore, the jury viewed the surveillance video and watched Alexander, who stipulated to being the individual in the video wearing a light colored hooded jacket and blue jeans.[6] The jury also heard Commonwealth witnesses testify regarding ejection and location of the casings at the crime scene. After reviewing all the evidence, the jury found credible the Commonwealth's evidence that showed Alexander as the shooter. Based on our review, we conclude the trial court properly exercised its discretion in

---

[6] ***See*** N.T., 8/17/2015, at 2-3.

finding the jury's verdict was not so contrary to the evidence as to shock the conscience.

Having reviewed the arguments presented by Alexander, and having found them to be meritless, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/10/2017