J-S59008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER FIELDS | : | |
| | : | |
| Appellant | : | No. 2981 EDA 2017 |

Appeal from the Judgment of Sentence May 8, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0009361-2014

BEFORE:  GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED DECEMBER 14, 2018**

Appellant, Christopher Fields, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for third-degree murder, firearms not to be carried without a license, carrying a firearm on public streets in Philadelphia, and possessing instruments of crime ("PIC").[1]  We affirm.

The relevant facts and procedural history of this case are as follows.

> [Around] 11:15 [p.m.] on June 7, 2014, [Victim] and his [wife], Shirley Ebron, were driving northbound on the Roosevelt Boulevard in Philadelphia, when he came to a stop at the traffic light at Fifth Street.  [Appellant] along with fifteen to twenty other motorcyclists were heading in the same direction.  A group of the bikers pulled in front of [Victim's] car[,] cutting him off as the others pulled up behind and beside him, irate that [Victim] had not previously allowed all of the bikers to pull in front of his car.

_____

[1] 18 Pa.C.S.A. §§ 2502(c), 6106(a)(1), 6108, and 907(a), respectively.

Having his car surrounded by the motorcyclists, [Victim] opened the door and took a step out of his vehicle at which time, [Appellant] drew his pistol and shot [Victim] five times, killing him.

Police Captain Nick Brown was off-duty and stopped perpendicular to the [B]oulevard when he first observed the bikers. After hearing the gunshots, [Captain] Brown saw Ms. Ebron get out of the passenger side of the car and come to the [aid] of [Victim]. The captain got out of his car and approached the crime scene. [Captain] Brown saw [Appellant], straddling his white motorcycle pointing a gun at Ms. Ebron, who was on the ground. At the same time, Officers Troy Ragsdale and Dawn Jones who were in an unmarked police car happened to be approaching the scene. The uniformed officers got out of their vehicle with guns drawn, prompting the bikers to flee. Officer Ragsdale approached the scene, yelling at [Appellant] to stop, and observed [Appellant] stuff an object into his vest. [Appellant's] motorcycle wouldn't start, so he ditched the bike, running northbound on 5th Street to the other side of the [B]oulevard. The police lost sight of [Appellant] in the brush, and [Appellant] made it across the [B]oulevard.

Tiffany Scott lived on the [B]oulevard. After hearing the shots, while standing on her upstairs balcony, she saw a man standing at her door. Ms. Scott yelled at him and he took off on foot, eventually running back across the [B]oulevard, where he was struck by a car. Not seriously injured, [Appellant] again took off into the brush. The police scoured the area, using a helicopter to light up the area and found [Appellant]. Officer Ragsdale identified [Appellant] and he was arrested. Additionally, the police found [Appellant's] goggles on Ms. Scott's walkway, and across from her steps, a .40 caliber Smith & Wesson handgun with a laser sight. Next to the pistol was a trashcan containing [Appellant's] helmet and black motorcycle vest. The vest is a "Wheels of Soul" vest with patches of "One Percent" and "Enforcer." Gunshot residue was detected on [Appellant's] clothing and ballistics [tests] showed that the .40 caliber [handgun], found where [Appellant] had been hiding, matched the fired cartridge casings on the street as well as in [Victim's] car door and front seat.

(Trial Court Opinion, filed December 19, 2017, at 3-4) (internal citations omitted).

On October 19, 2016, a jury convicted Appellant of third-degree murder, firearms not to be carried without a license, carrying a firearm on public streets in Philadelphia, and PIC. The court sentenced Appellant on May 8, 2017, to an aggregate term of 28½ to 57 years' imprisonment. That same day, Appellant timely filed a post-sentence motion and counsel withdrew his appearance. The court appointed new counsel on May 10, 2017, who filed "Post-Sentence Motions *Nunc Pro Tunc*" on June 2, 2017. On August 31, 2017, both post-sentence motions were denied by operation of law. Appellant timely filed a notice of appeal on September 12, 2017. The court, on October 2, 2017, ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant timely complied on October 19, 2017.

Appellant raises the following issues for our review:

WAS THE EVIDENCE SUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION FOR THIRD-DEGREE MURDER?

WERE THE VERDICTS FOR ALL COUNTS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE?

DID THE TRIAL COURT ABUSE ITS DISCRETION IN SENTENCING APPELLANT TO TWENTY-EIGHT AND ONE-HALF (28½) TO FIFTY-SEVEN (57) YEARS' IMPRISONMENT?

(Appellant's Brief at 5).

Regarding Appellant's first two issues, after a thorough review of the

record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Joseph Scott O'Keefe, we conclude these issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of those questions presented. (*See* Trial Court Opinion at 4-7) (finding: **(1-2)** Appellant and 15 to 20 other motorcyclists surrounded Victim and his wife in their vehicle because Victim did not let them in front of his vehicle; Appellant shot unarmed Victim five times after he exited his vehicle; police identified Appellant as shooter; DNA analysis connected Appellant to clothing he discarded after he fled scene; photograph from Appellant's cell phone showed Appellant wearing discarded vest; ballistics matched Appellant's discarded gun to fired cartridge casings and bullet fragments at crime scene; police recovered gun from area where Appellant hid; Commonwealth presented sufficient evidence to sustain Appellant's conviction for third-degree murder; conviction did not shock court's conscience, thus, verdict was not against the weight of the evidence). The record supports the trial court's rationale. Accordingly, we affirm Appellant's first two issues on the basis of the trial court opinion.

In his third issue, Appellant argues the court imposed an excessive sentence based solely on the seriousness of the offense and did not consider all relevant sentencing factors. As presented, Appellant challenges the discretionary aspects of his sentence. *See Commonwealth v. Ventura*, 975 A.2d 1128 (Pa.Super. 2009), *appeal denied*, 604 Pa. 706, 987 A.2d 161

(2009) (stating claim that court imposed sentence based solely on seriousness of offense and failed to consider all relevant sentencing factors challenges discretionary aspects of sentence).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. **Commonwealth v. Sierra**, 752 A.2d 910 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

Objections to the discretionary aspects of a sentence are waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed at that hearing. **Commonwealth v. Kittrell**, 19 A.3d 532 (Pa.Super. 2011). **See also Commonwealth v. Oree**, 911 A.2d 169 (Pa.Super. 2006), *appeal denied*, 591 Pa. 699, 918 A.2d 744 (2007) (explaining challenges to discretionary aspects of sentencing must be raised in post-sentence motion or during sentencing proceedings; absent such efforts, claim is waived).

Instantly, Appellant timely filed a post-sentence motion on May 8, 2017,[2] in which he argued the court unreasonably sentenced him in the aggravated sentencing range and did not consider the testimony of character witnesses at the sentencing hearing. On appeal, Appellant argues the court focused solely on the seriousness of the crime and did not consider relevant sentencing factors. As presented, these claims are distinct. Appellant's failure to specify in his post-sentence motion the precise claims he now raises constitutes waiver of his issue on appeal. *See id.*; *Evans, supra*. Accordingly, we affirm the judgment of sentence. *See generally In re K.L.S.*, 594 Pa. 194, 197 n.3, 934 A.2d 1244, 1246 n.3 (2007) (stating where issues are waived on appeal, this Court should affirm rather than quash appeal).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/18

---

[2] Appellant did not challenge the discretionary aspects of sentencing in the June 2, 2017 post-sentence motion.

- 6 -

FILED

DEC 19 2017

Office of Judicial Records
Appeals/Post Trial

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA : CRIMINAL TRIAL DIVISION

: 

Vs : 2981 EDA 2017

: 

CHRISTOPHER FIELDS : CP-51-CR-0009361-2014



CP-51-CR-0009361-2014 Comm. v. Fields, Christopher
Opinion

8045567281

OPINION

O'KEEFE, J.

Christopher Fields appeals the judgment of sentence for murder of the third degree, possessing the instrument of a crime and violation of The Uniform Firearms Act of an aggregate sentence of twenty-eight and one-half to fifty-seven years' incarceration. Mr. Fields alleges that the evidence was insufficient, the verdict was against the weight of the evidence, and that the sentence was excessive.

## PROCEDURAL HISTORY:

Mr. Fields was arrested on June 9, 2014, and charged with murder, possessing the instruments of a crime and violations of The Uniform Firearms Act. The defendant was bound over for court on all charges following presentation to an investigating grand jury.

Trial commenced October 12, 2016, with a jury convicting Fields of murder of the third degree, possessing the instrument of a crime, carrying a firearm in public in Philadelphia and carrying a firearm without a license seven days later. A presentence investigation was completed and on March 8, 2017, the defendant was sentenced to twenty to forty years' incarceration for murder of the third degree, three and one-half to seven years for carrying a firearm without a license, two

1

and one-half to five years each, for carrying a firearm in public in Philadelphia and possessing the instrument of a crime, all consecutive to each other, for an aggregate sentence of twenty-eight and one-half to fifty-seven years' incarceration. Post-Sentence Motions were filed and denied. Timely appeal was made to the Superior Court of Pennsylvania.

## STANDARD OF REVIEW:

The standard of review for a claim of insufficiency of the evidence is that an appellate court must view the evidence in a light most favorable to the Commonwealth as the verdict winner, and determine whether the evidence presented at trial, including all reasonable inferences that may be drawn therefrom, was sufficient to prove all of the elements of the crime beyond a reasonable doubt. *See Commonwealth v. McCalman*, 795 A.2d 412 (Pa.Super. 2002).

A claim that the verdict was against the weight of the evidence requires that the court examine the record to determine whether the fact finder's verdict was so contrary to the evidence as to shock one's sense of justice and thereby mandate the granting of a new trial. *Commonwealth v. Habay*, 934 A.2d 732 (Pa.Super. 2007), *appeal denied*, 954 A.2d 575 (Pa. 2008). Whether or not a new trial should be granted on the grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court, whose decision will not be reversed absent a showing of an abuse of discretion. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000); *Commonwealth v. Brown* 538 Pa. 410, 648 A.2d 1177 (1994).

The standard of review for a claim of an improper or excessive sentence is that "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Johnson*, 446 Pa.Super. 192, 197, 666 A.2d 690, 693 (1995) (quoting *Commonwealth v. Dotter*, 403 Pa.Super.

2

507, 516, 589 A.2d 726 (1991)).

## FACTS:

The facts, when viewed in the light most favorable to the Commonwealth as the verdict-winner, show that about 11:15 on the night on June 7, 2014, Todd Riley and his girlfriend, Shirley Ebron, were driving northbound on the Roosevelt Boulevard in Philadelphia, when he came to a stop at the traffic light at Fifth Street. Fields along with fifteen to twenty other motorcyclists were heading in the same direction. A group of the bikers pulled in front of Riley's car cutting him off as the others pulled up behind and beside him, irate that Riley had not previously allowed all of the bikers to pull in front of his car. Having his car surrounded by the motorcyclists, Riley opened the door and took a step out of his vehicle at which time, Fields drew his pistol and shot Riley five times, killing him.

Police Captain Nick Brown was off-duty and stopped perpendicular to the boulevard when he first observed the bikers. After hearing the gunshots, Brown saw Ms. Ebron get out of the passenger side of the car to come to the aide of Riley. The captain got out of his car and approached the crime scene. (N.T. 10-13-2016, pp. 77-84, 94-96, 103-107; 10-14-2016, pp. 61-67). Brown saw this defendant, straddling his white motorcycle pointing a gun at Ms. Ebron, who was on the ground. At the same time, Officers Troy Ragsdale and Dawn Jones who were in an unmarked police car happened to be approaching the scene. The uniformed officers got out of their vehicle with guns drawn, prompting the bikers to flee. Officer Ragsdale approached the scene, yelling at the defendant to stop, and observed Fields stuff an object into his vest. Fields' motorcycle wouldn't start, so he ditched the bike, running northbound on 5th Street to the other side of the boulevard. The police lost sight of the defendant in the brush, and Fields made it across the boulevard. (N.T. 10-13-2016, pp. 84-92, 95-99, 157-163).

3

Tiffany Scott lived on the boulevard. After hearing the shots, while standing on her upstairs balcony, she saw a man standing at her door. Ms. Scott yelled at him and he took off on foot, eventually running back across the boulevard, where he was struck by a car. Not seriously injured, Fields again took off into the brush. The police scoured the area, using a helicopter to light up the area and found Fields. Officer Ragsdale identified the defendant and he was arrested. Additionally, the police found the defendant's goggles on Ms. Scott's walkway, and across from her steps, a .40 caliber Smith & Wesson handgun with laser sight. Next to the pistol was a trashcan containing the defendant's helmet and black motorcycle vest. The vest is a "Wheels of Soul" vest with patches of "One Percent" and "Enforcer". Gunshot residue was detected on the defendant's clothing and ballistics showed that the .40 caliber, found where the defendant had been hiding, matched the fired cartridge casings on the street as well as in the decedent's car door and front seat. (N.T. 10-14-2016, pp. 4-29, 44-54,151-160).

## LEGAL DISCUSSION

### *Sufficiency of the Evidence*

Defendant's first claim of error is that there was insufficient evidence presented at trial to find him guilty of murder of the third degree. When evaluating a claim of insufficiency of the evidence, we must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes,* 521 Pa. 423, 555 A.2d 1264, 1267 (1989). Further, the evidence must be viewed "in the light most favorable to the Commonwealth as the verdict winner, accepted as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.* "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and

4

inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Thomas,* 65 A.3d 939, 943 (Pa.Super. 2013) (citing *Commonwealth v. Ratsamy,* 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007)). Furthermore, the prosecution may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. DiStefano,* 782 A.2d 574, 582 (Pa.Super. 2001).

Third degree murder is statutorily defined as "All other kinds of murder shall be murder of the third degree." 18 Pa.C.S. § 2502(c). To sustain a conviction for third-degree murder, the Commonwealth must prove that the defendant acted with wanton and willful disregard of an unjustified and extremely high risk that his conduct would result in death or serious bodily injury to another. The prosecution must prove that the perpetrator took action while consciously disregarding the most serious risk he was creating and that by his disregard of that risk, the actor demonstrated his extreme indifference to the value of human life. *Commonwealth v. Fisher,* 622 Pa. 366, 375, 80 A.3d 1186, 1191 (2013), *Commonwealth v. Santos,* 583 Pa. 96, 876 A.2d 360, 363 (2005).

In the present case, the defendant and fifteen to twenty other bikers surrounded the decedent and his girlfriend, furious because decedent had not let all of them cut in front of him. As a result of this 'road rage', the decedent attempted to get out of his car at which time Fields pulled out his gun, shooting the unarmed Riley five times from less than twelve feet away, resulting in the decedent's death. The defendant's weapon of choice – a .40 caliber. (N.T. 10-17-2016, pp. 141-144). The defendant's motorcycle jacket identifies him as "The Enforcer" and "One Percenter," an obvious self-portrait as an outlaw.

The defendant was identified as the shooter by the police. A DNA analysis connected him to the discarded clothing as did a photograph of the defendant with his white Harley, wearing the

5

same vest. (N.T. 10-17-2016, pp. 11-27). Ballistics matched his discarded gun to the fired cartridge casings and bullet fragments at the scene and shot into the decedent's car. The gun was recovered where Fields had been hiding. (N.T. 10-17-2016, pp. 42-60). Captain Brown and Officer Ragsdale witnessed the crime in its entirety. The prosecution proved that the motorcycle left at the scene belonged to the defendant. (N.T. 10-17-2016, pp. 152-154). The evidence was not only sufficient, it was overwhelming.

In order to prove an individual guilty of carrying a firearm without a license under 18 Pa.C.S. § 6106, the prosecution must prove, beyond a reasonable doubt, that the defendant carried a firearm in a vehicle or concealed on or about him, was not in his home or fixed place of business and did not have a valid, lawfully issued license for carrying the firearm. A firearm under this statute must be operable or readily convertible to being operable. 18 Pa.C.S. § 6106; *Commonwealth v. Gainer*, 7 A.3d 291 (Pa.Super. 2010), *app. denied*, 23 A.3d 1055 (Pa. 2011).

For an individual to be found guilty of carrying a firearm on public street or public property in Philadelphia, the prosecution needs to prove that the individual carried a firearm, rifle or shotgun at any time on the Philadelphia public streets or public place and that the person is not licensed to carry a firearm and not exempt from such licensing requirement.

The prosecution clearly met their burden with respect to these two charges. As noted above, the evidence clearly was sufficient to convict the defendant of both firearms violations. Accordingly, the convictions should stand.

### Weight of the Evidence

A claim that a conviction was contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. *Commonwealth v. Widmer*, 744 A.2d 745 (2000). "[T]he

6

weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Marks,* 704 A.2d 1095, 1098 (Pa.Super. 1997) (citing *Commonwealth v. Simmons,* 541 Pa. 211, 229, 662 A.2d 621, 630 (1995)). A defendant's request for a new trial based on the argument that the verdict was against the weight of the evidence will only be granted when the verdict is so contrary to the evidence as to make the award of a new trial imperative. *Commonwealth v. Mason,* 559 Pa. 500, 513, 741 A.2d 708, 715 (1999); *Commonwealth v. Auker,* 545 Pa. 521, 541, 681 A.2d 1305, 1316 (1996). As noted in the preceding section, the evidence was both compelling and substantial and does not shock the conscious of the court.

## *Improper Sentence*

Defendant next asserts that his sentence was excessive and did not take into account all of the factors enumerated in 42 Pa.C.S. §9721(b). The law is clear that mere assertions of excessiveness do not raise a substantial question for review. *Commonwealth v. Zeigler,* 112 A.3d 656 (Pa.Super. 2015); *Commonwealth v. Dodge,* 77 A.2d 1263, 1269-1270 (Pa.Super. 2013); *Commonwealth v. Koehler,* 558 Pa. 334, 737 A.2d 225 (1999); *Commonwealth v. Ahmed,* 961 A.2d 884 (Pa.Super. 2008); *Commonwealth v. Moury,* 992 A.2d 162, 171-172 (Pa.Super. 2010). As such, this claim should be denied.

Addressing the issue on the merits, it is well-settled that "sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Johnson,* 446 Pa.Super. 192, 197, 666 A.2d 690, 693 (1995) (quoting *Commonwealth v. Dotter,* 403 Pa.Super. 507, 516, 589 A.2d 726 (1991)). "To be a manifest abuse of discretion, a sentence must either exceed the statutory limits or be manifestly excessive. The discretion of a trial judge must be accorded great weight because he is

7

in the best position to weigh such factors as the nature of the crime, the defendant's character, and the defendant's displays of remorse, defiance, or indifference." *Commonwealth v. Minnott*, 395 Pa.Super. 552, 554, 577 A.2d 928, 929 (1990).

After reviewing the pre-sentence investigation reports, this court sentenced the defendant to twenty-eight and one-half to fifty-seven years' incarceration. The guidelines for this defendant with a prior record score of five and an offense gravity score of fourteen for murder of the third degree applying the deadly weapon used enhancement is two hundred and ten months to the statutory limit. Mr. Fields was sentenced to the statutory limit, hence that sentence was within the guidelines.

As to the crime of carrying a firearm without a license the offense gravity score is nine, providing guidelines of a sixty-six to seventy-eight month minimum sentence. The defendant was sentenced to forty-two to eighty-four months, again, within the guideline range. Carrying a firearm in public in Philadelphia and possessing the instrument of a crime has an offense gravity score of five, for a presumptive range of twenty-five to forty months, to which Fields was sentenced to thirty to sixty months, again within the guidelines. The final crime to which the defendant was convicted, possessing an instrument of a crime carries a four as the offense gravity score, with a presumptive range of fifteen to twenty-two months minimum. Fields was given thirty to sixty months incarceration, eight months outside of the guidelines.

As a juvenile, this defendant was first arrested September 14, 1998 in Essex County, New Jersey and subsequently adjudicated delinquent for possession of a controlled substance on school property. Eight days later he was again arrested and subsequently adjudicated delinquent for manufacturing/delivering a controlled substance. While on probation for that offense, Fields was again

8

arrested and adjudicated delinquent for theft and resisting arrest. Mr. Fields was placed in a year-long diversionary program.

As an adult this defendant has sixteen arrests, resulting in ten convictions in three different states. At eighteen years of age, four months into the juvenile diversionary program, Fields was arrested and eventually convicted of unlawful possession of a handgun, possession of a defaced firearm and possession of a handgun for unlawful purpose in Hudson County, New Jersey. While awaiting trial in the gun case, the defendant was arrested two more times and subsequently convicted of possession of a controlled substance as well as theft. In 2002, while on probation for the gun case, Fields resisted arrest in New Castle County, Delaware. Nine months later this defendant was again convicted, this time for loitering for purposes of prostitution in Union County, New Jersey. While still on probation, Fields was convicted of criminal impersonation in 2003, again in New Castle, with a disorderly conduct in Essex County, New Jersey in 2004. While still on probation, Fields, in 2005, was convicted of for possession of drug paraphernalia in Kent County, Delaware. While awaiting trial for that charge, the defendant, in 2006, was again arrested, and eventually convicted of hindering prosecution, again in New Castle County, Delaware. Although not convicted, Fields was arrested in 2009 in Newark, New Jersey for domestic violence. In 2010, Fields added another resisting arrest in Essex County, New Jersey to his criminal history. On February 25, 2014, again in Essex County, New Jersey, Fields was arrested for aggravated assault – pointing a handgun, threatening to kill and possession of a firearm for an unlawful purpose. The defendant was not convicted of that case. Which brings us to the events of June 7, 2014, for which Fields was sentenced by the undersigned. Taking the defendant's conduct into consideration, along with considerations of public policy, a sentence outside of the aggravated range was warranted.

9

"The statute requires a trial judge who intends to sentence a defendant outside the guidelines to demonstrate on the record, as a proper starting point, his awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as he also states of record 'the factual basis and specific reasons which compelled [him] to deviate from the guideline range.'"

*Commonwealth v. Johnson*, 446 Pa.Super. 192, 198, 666 A.2d 690, 693 (1995) (quoting *Commonwealth v. Royer*, 328 Pa.Super. 60, 476 A.2d 453 (1984)). In the instant case the sentences for all but the most minor offence were within the guideline range.

"Our Supreme Court has held that where a pre-sentence report exists, we shall 'presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with the mitigating statutory factors.'" *Commonwealth v. McKiel*, 427 Pa.Super. 561, 565, 629 A.2d 1012, 1013-14 (1993) (quoting *Commonwealth v. Devers*, 519 Pa. 88, 101-102, 546 A.2d 12, 18 (1988)). "Having been fully informed by the presentence report, the sentencing court's discretion should not be disturbed." *Id.*

The undersigned reviewed the pre-sentence reports of the defendant, along with all of the evidence presented and clearly articulated the reasons for the sentence as the defendant's long criminal history, largely involving crimes of the same nature, and the need for the public to be protected from this same behavior by the defendant again. This defendant has not learned to live in our society, and our society needs to be protected from the likes of Mr. Fields. This defendant has had numerous chances at rehabilitation and all have failed. At sentencing, the defendant lacked any remorse. He has been convicted thirteen times. The sentence imposed was fair and just under the circumstances. It properly took into account the need to protect the public from the defendant,

10

his rehabilitative needs and the gravity of the particular offense. *See Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa.Super. 2002); *Commonwealth v. Burkholder*, 719 A.2d 346, 350 (Pa.Super. 1998). The defendant has produced no evidence that the sentence imposed was either inconsistent with a specific provision of the sentencing code or contrary to the fundamental norms which underlie the sentencing process and as such, there is no substantial question. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa.Super. 2000). Accordingly this claim should be denied.

Furthermore, the facts of this case demand the sentence imposed. This killing was completely senseless, and merciless. This defendant, with fifteen or twenty bikers surrounded the decedent's car to terrorize him and his girlfriend. The reason – the decedent had not let all twenty bikers pull in front of him. Being surrounded, Riley went to get out of his car and was mercilessly and cowardly shot dead. Fields shot the decedent at least five times with a .40 caliber pistol, less that twelve feet away. Riley was unarmed. This collection of cowards were imposing their brand of terror upon a legitimate motorist of this city for no reason other than this biker didn't believe he was being respected. Fields proudly wore his 'colors' with a patch claiming he was the enforcer. Likewise he donned a one-percenter patch, a reference that the defendant considered himself to be an outlaw and an outlaw he is. The sentence imposed properly took into consideration the nature of the crime, the defendant's character, and the defendant's rehabilitative needs and the obligation to protect the public. Accordingly, the judgment of sentence should be affirmed.

BY THE COURT:

J. SCOTT O'KEEFE, J.

DATE: December 19, 2017

11

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CRIMINAL TRIAL DIVISION |
| | : | |
| Vs | : | 2981 EDA 2017 |
| | : | |
| CHRISTOPHER FIELDS | : | CP-51-CR-0009361-2014 |

## Proof of Service

I hereby certify that I am on this day serving the foregoing Court's Opinion upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

Defense Attorney:       Gina A. Capuano, Esquire
                        1515 Market Street, Suite 1200
                        Philadelphia, PA 19102

Type of Service:        ( ) Personal (X) First Class Mail ( ) Interoffice ( ) Other, please specify

District Attorney:      Hugh Burns, Esquire
                        District Attorney's Office
                        Appeals Division
                        3 South Penn Square
                        Philadelphia, PA 19107

Type of Service:        ( ) Personal ( ) First Class Mail (X) Interoffice ( ) Other, please specify

Date: December 19, 2017                    _Allison O'Keefe_
                                           Allison M. O'Keefe, Law Clerk

12