J-S28045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
   Appellee : 
: 
    v. : 
: 
RUSSELL WEATHERS, : 
: 
   Appellant : No. 1826 MDA 2018

Appeal from the PCRA Order Entered October 9, 2018
in the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0005545-2013

BEFORE:  BOWES, J., MCLAUGHLIN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:      **FILED JULY 19, 2019**

Russell Weathers (Appellant) appeals *pro se* from the October 9, 2018

order dismissing his petition filed pursuant to the Post Conviction Relief Act

(PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

We set forth the following pertinent factual and procedural history of

this case.  In 2013, Appellant was charged with two counts of aggravated

assault and one count of simple assault, arising from Appellant's August 1,

2013 physical attack on his girlfriend, Abigail Shaw.

> Shaw and [Appellant] had become involved in a romantic
> relationship beginning in August 2012. As the relationship
> progressed, around November 2012, the two moved in together
> at [a] South 2nd Street apartment along with [] Shaw's three
> children.
>
> Shaw testified at trial [as] to her version of the
> relationship with [Appellant] and the events of August 1, 2013.
> [] Shaw described her relationship with [Appellant] as initially

---

*Retired Senior Judge assigned to the Superior Court.

good until the end of November 2012, when she encountered her first bout of violence with him.

Trial Court Opinion, 11/23/2015, at 3-4 (citations omitted). Shaw testified that Appellant continued to abuse her regularly and, by April 2013, "the assaults became daily occurrences." *Id.* at 5.

The incident that gave rise to the charges in this matter occurred in the early morning hours of August 1, 2013. [] Shaw had returned from her classes for the day where she found [Appellant] listening to music on his iPad. She stated that around 7:00 p.m. he had gotten emotional while listening to music that he used to enjoy with his deceased mother so, he stormed out of the house saying he was going to buy cigarettes.

Later, around 9:00 p.m., [] Shaw took her children to the grocery store but when she returned, she realized that she had locked herself out of the apartment. She placed a note on the front door stating the she was locked out and attempted to find a place to stay in the meantime. After being unsuccessful at finding a friend who was home, Shaw returned to the apartment to wait in [her] car for [Appellant] to return. She later awoke to a cab pulling in behind her parked car with [Appellant] in the front passenger seat. Shaw explained that she knew it was [Appellant] because they used cabs regularly and, since [Appellant] and the cab driver were friends, he would ride in the passenger seat. [] Shaw approached the passenger door saying she had been locked out when [Appellant's] arm came out of the open window and, as he said "bitch, you're playing me," he smacked her head off the front hood of the vehicle. [Appellant] then got out of the car, grabbed Shaw by the neck and slammed her to the ground while her 8 year old son was watching. As she was on her back, he smacked her head against the street and punched her in the face while repeatedly calling her a bitch. [] Shaw remembers Appellant leaving in the cab and then driving [herself] to Harrisburg Hospital.

On that same night, Mark Cicak [] was returning home from his employment from UPS in Harrisburg. He had worked the night shift[,] which usually ended between 2:00 a.m. and 4:00 a.m. While driving in the far left lane on South 2nd Street around 3:00 a.m., [] Cicak saw a couple on the sidewalk to his

left against a parked car, who he thought were in an intimate embrace until the man threw the woman to the ground and began assaulting her. [] Cicak immediately called 911. He then circled the nearby blocks so he could drive past on Second Street again. He reported that the male was wearing a white T-shirt, jeans and a black hat. When [] Cicak arrived back on Second Street, he saw the same pair but now the assault was occurring in the street with the male punching and kicking the female. At all times, Cicak was on the telephone with 911 describing the events he was witnessing. He passed them and looped around a third time when he saw the assault stop and the male jump into the passenger side of a cab and leave. [] Cicak tried to follow the cab straight on Second Street to obtain a license plate number; however, he was unsuccessful. He then circled back a third time to ascertain the condition of the female but, when he arrived at the area where the assault took place, she was gone. After one more loop to see if she was walking along Second Street, he encountered the police at the scene of the assault. [] Cicak stopped to speak with the police to relay what he had witnessed.

*Id.* at 6-7 (citation omitted).

Once Shaw arrived at the hospital, she received medical attention for her injuries. It was determined that Shaw's nose was fractured in three places. *Id.* at 8. At the hospital, Shaw spoke to police and identified Appellant as her attacker. *Id.* at 9. However, in the months that followed, Shaw, indecisive as to whether or not to continue or end the relationship, stayed in contact with Appellant and eventually recanted her identification of Appellant as her attacker. *Id.* at 12-13. Subsequently, Shaw cut off contact with Appellant. *Id.* at 13.

At trial, Shaw identified Appellant as the man who attacked her. Additionally, Cicak testified that shortly after the incident, police contacted him to discuss the assault he had witnessed. *Id.* at 7-8. Cicak met with

police and identified Appellant from a photo array as the man he saw attacking a woman on Second Street. *Id.*

> Appellant testified on his own behalf to present his version of events. At the time of the August 1, 201[3] incident, [Appellant] was working for a painting contractor. He testified that on the night beginning July 31, 201[3] and leading into the morning of August 1, 201[3], he was working with an individual named Mike to finish painting apartment units and hallways at the Camp Hill Plaza Apartments. [Appellant] said that they were up against a deadline so the two decided to stay late and finish the painting.

> [Appellant] had seen [] Shaw earlier in the day when she came to the job site asking to trade in the rental car they had been driving for a different one. He left work for a time to travel with Shaw to change rental vehicles. [Appellant] stated that after the cars were traded he called his co-worker[, Anthony Moore,] to pick him up and bring him back to the work site. From work he went back to Mike's apartment in downtown Harrisburg for a break then returned to the job site to finish painting until approximately 2:00 a.m. [Appellant] then spent the night at Mike's place.[1]

*Id.* at 14-15 (citations omitted). At the conclusion of trial, Appellant was found guilty of all charges.

> As a result of his convictions, on March 20, 2015, [Appellant] was sentenced at count one[, aggravated assault,] to a period of incarceration of not less than 108 months nor more than 240 months, a fine of $[2,500], and the payment of the costs of prosecution. [The remaining two counts] merged for purposes of sentencing and it was ordered that [Appellant was] prohibited from any contact in any manner with [Shaw].

Memorandum Order, 8/29/2018, at 2 (unnecessary capitalization omitted).

---

[1] Appellant later testified that he spent the night at Anthony Moore's apartment. N.T., 2/10/2015, at 250.

- 4 -

On August 22, 2016, this Court affirmed Appellant's judgment of sentence, and our Supreme Court denied Appellant's petition for allowance of appeal on February 22, 2017. *Commonwealth v. Weathers*, 156 A.3d 344 (Pa. Super. 2016) (unpublished memorandum), *appeal denied*, 166 A.3d 1240 (Pa. 2017). Appellant timely filed *pro se* the PCRA petition that is the subject of the instant appeal, his first, on February 26, 2018. In his *pro se* petition, Appellant

> checked the box that he did not want a lawyer to represent him. A *Grazier*[2] hearing[3] was held on March 8, 2018 and th[e PCRA c]ourt, after conducting a thorough colloquy apprising [Appellant] of his right to counsel during collateral review, found that [Appellant] made a knowing, intelligent, and voluntary waiver of his right to counsel during review of his PCRA petition. [Appellant] was further given until April 9, 2018 to file any supplemental/amended PCRA petition. [Appellant] filed a request for an extension of time to file a PCRA petition. Said [request] was granted. On June 13, 2018, [Appellant] filed an amended PCRA petition. The Commonwealth filed responses on July 14 and July 28, 2018.

Memorandum Order, 8/29/2018, at 2-3 (footnote and unnecessary capitalization omitted).

On August 29, 2018, the PCRA court filed a memorandum order and notice of its intent to dismiss the petition without a hearing pursuant to

---

[2] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

[3] The transcript of this hearing is not included in the certified record.

Pa.R.Crim.P. 907. Appellant responded, and the petition was dismissed by order of October 9, 2018. Appellant timely filed a notice of appeal.[4]

On appeal, Appellant contends he is entitled to relief based upon: (1) after-discovered evidence pursuant to 42 Pa.C.S. § 9543(a)(2)(vi)[5] due to discovery of Shaw's 2017 conviction for false reporting; (2) the discovery of *ex parte* communications between the Commonwealth, magisterial district judge, the trial court, and Shaw; (3) the PCRA court's two denials of his requests for discovery; and (4) ineffective assistance of trial counsel for failing to call alibi witnesses. Appellant's Brief at 3-4. We address these claims sequentially.

Our standard of review of an order granting or denying post-conviction relief is limited to examining whether the court's determination is supported by evidence of record and whether it is free of legal error. Our task is not to engage in a *de novo* evaluation of testimony. **Commonwealth v. Cobbs**, 759 A.2d 932, 934 (Pa. Super. 2000) (citation omitted).

As noted *supra*, Appellant's "after-discovered evidence" is the discovery of Shaw's 2017 guilty plea for false reporting. Appellant's Brief at

---

[4] Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

[5] Under the PCRA, a petitioner may be eligible for relief if he pleads and proves, *inter alia*, "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi).

10. Appellant avers Shaw's conviction stems from her "falsely accusing a man of domestic assault" in July 2017. ***Id.***; ***See also id.*** at Exhibit A-1 (news article from Fox 43 detailing Shaw's charges). Appellant contends Shaw's subsequent conviction proves his innocence.[6] ***Id.*** at 11.

We review this claim mindful of the following.

After-discovered evidence is a basis for a new trial only if it: (1) has been discovered after the trial and could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeachment purposes; and (4) is of such a nature and character that a different verdict will likely result if a new trial is granted.

***Cobbs***, 759 A.2d at 934. Here, the PCRA court found Appellant's after-discovered evidence claim did not entitle him to relief because "[t]he after-discovered evidence rule cannot be used to solely impeach a witness's credibility." Order, 10/9/2018.

---

[6] In his PCRA petition and on appeal, Appellant also claims he is entitled to a new trial based upon after-discovered evidence pursuant to Pa.R.Crim.P. 720 (C). This rule provides that "[a] post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). This rule is inapplicable to the case before us; rule 720(C) governs new evidence discovered during a direct appeal process only. ***See*** Pa.R.Crim.P 720 (comment) ("[A]fter-discovered evidence discovered during the post-sentence stage must be raised promptly with the trial judge at the post-sentence stage; after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge; and **after-discovered evidence discovered after completion of the direct appeal process should be raised in the context of the PCRA.**") (emphasis added).

Upon review, we find the PCRA court's conclusion that the alleged after-discovered evidence would not be used for anything beyond impeaching Shaw's credibility to be supported by the record. Clearly, Shaw's false reporting conviction could be introduced only to attack the credibility of Shaw, especially considering Shaw's 2017 conviction stemmed from a wholly unrelated matter involving an individual who was **not** Appellant.[7]

Moreover, this Court is unpersuaded by Appellant's bald assertions that Shaw's conviction, which occurred two years after Appellant was found guilty of assaulting Shaw, constitutes more than impeachment evidence. It neither proves his innocence nor would result in a different verdict.[8] **See**

---

[7] Additionally, at trial, defense counsel questioned Shaw about her 2008 conviction for false reporting, false statements, and theft by unlawful taking. N.T., 2/9/2015, at 123. In his appellate brief, Appellant argues that this conviction, in conjunction with Shaw's 2017 conviction, proves that Shaw lied when she identified him as her attacker. Appellant's Brief at 18-20. Not only do we disagree with Appellant's logic, we find Appellant's "after-discovered evidence" could also be considered merely cumulative. **See Commonwealth v. Padillas**, 997 A.2d 356, 365 (Pa. Super. 2010) ("Where the new evidence, however, supports claims the defendant previously made and litigated at trial, it is probably cumulative or corroborative of the evidence already presented.").

[8] We note that, irrespective of the foregoing, by asserting that this evidence alone proves his innocence, Appellant fails to account for the fact that Cicak witnessed the assault and identified Appellant as the individual he saw attacking Shaw. While Appellant attempts to argue that Cicak's identification was faulty, **see** Appellant's brief at 19-20, it was within the province of the jury, as fact-finder to assess the credibility of testifying witnesses. **See Commonwealth v. Miller**, 172 A.3d 632, 642 (Pa. Super. *(Footnote Continued Next Page)*

***Commonwealth v. Griffin***, 137 A.3d. 605, 610 (Pa. Super. 2016) (quoting

***Commonwealth v. Castro***, 93 A.3d 818, 827, n.13 (Pa. 2014) (finding that

"[e]ven if his impeachment would 'destroy and obliterate' a witness, it is still

impeachment" and "a new trial could not be granted ... on that basis

alone")); ***Commonwealth v. Foreman***, 55 A.3d 532, 537-538 (Pa. Super.

2012) (finding Foreman's after-discovered evidence claim did not entitle him

to relief when, *inter alia*, Foreman "failed to show any nexus between his

case and Detective Simon's alleged misconduct in an incident, which

occurred more than two years after [Foreman's] conviction"). Accordingly,

we agree with the PCRA court that Appellant is not entitled to relief on his

after-discovered evidence claim.

Next, Appellant avers he "was denied a fair trial, due process, and

equal protection under the law[,]" when the Commonwealth, magisterial

district judge and the trial court took part in *ex parte* communications[9] with

Shaw without Appellant's knowledge. Appellant's Brief at 25-31.

*(Footnote Continued)* ————————

2017) ("Resolving contradictory testimony and questions of credibility are matters for the finder of fact.").

[9]Appellant also accuses the magisterial district judge of being biased against Appellant, conspiring against him, and participating in unlawful *ex parte* communications when, at his preliminary hearing, the court held over charges for trial despite Shaw's statements at the hearing that Appellant did not attack her. Appellant's Brief at 25-31. Appellant cites no evidence to support these allegations. This Court has held an appellant cannot present bald assertions in support of relief. ***See Commonwealth v. Rush***, 959 A,2d 945, 950-51 (Pa. Super. 2008) ("It is not for this Court to develop an appellant's arguments. Rather, it is the appellant's obligation to present

*(Footnote Continued Next Page)*

Our Supreme Court has defined the term *ex parte* as:

> On one side only; by or for one party; done for, in behalf of, or on the application of, one party only. A judicial proceeding, order, injunction, etc., is said to be *ex parte* when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by any person adversely interested.
>
> ***Commonwealth v. Carpenter***, [725 A.2d 154, 168-69 (Pa. 1999)] (citation omitted). With exceptions not applicable here, both the Code of Judicial Conduct and Rules of Professional Responsibility prohibit *ex parte* communications. ***See*** Code of Judicial Conduct Rule 2.9, and Rule of Professional Conduct 3.5(b).

***Commonwealth v. McCullough***, 201 A.3d 221, 229 (Pa. Super. 2018).

"Initially, we must determine whether this claim is cognizable under the PCRA because the PCRA limits the *types* of claims that are cognizable."

***Commonwealth v. Moore***, 653 A.2d 24, 25 (Pa. Super. 1995) (emphasis in original). ***See*** 42 Pa.C.S. § 9543(a)(2) (enumerating seven classes of claims cognizable under the PCRA). Appellant asserts that he is eligible for relief under the PCRA because the alleged *ex parte* communications constituted a violation of his constitutional rights and therefore, is a cognizable claim pursuant to 42 Pa.C.S. § 9543(a)(2)(i) (specifically providing that an alleged "violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances

*(Footnote Continued)* ────────────

developed arguments and, in so doing, apply the relevant law to the facts of the case, persuade us there were errors, and convince us relief is due because of those errors. If an appellant fails to do so, we may find the argument waived."). Thus, Appellant is not entitled to relief.

of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place" is cognizable under the PCRA). Appellant's Reply Brief at 3 (unnumbered). However, Appellant "fails to rationalize how this alleged error 'so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.' 42 Pa.C.S. § 9543(a)(2)(i)." *Commonwealth v. Gwynn*, 943 A.2d 940, 951 (Pa. 2008). Thus, we are inclined to find that Appellant failed to "plead and prove by a preponderance of the evidence" that he is entitled to relief. 42 Pa.C.S. § 9543(a).

Regardless, even if Appellant raised and pled properly a cognizable post-conviction issue, we would conclude it lacks merit. In this case, Appellant cites hearings that were held in relation to a material witness bench warrant issued by the trial court against Shaw upon the Commonwealth's request. Appellant's Brief at 26-29. In essence, Appellant claims that by arresting Shaw and subjecting her to a period of incarceration, the trial court and Commonwealth engaged in harassing behavior to force Shaw into lying about Appellant's involvement in the assault after Shaw stated several times that her assailant was unknown to her. *Id.*

The PCRA court responded to Appellant's claim as follows.

[Appellant] raises a claim of th[e trial c]ourt having *ex parte* hearings [with] Shaw. At first, [] Shaw was reluctant to testify against [Appellant]. The Commonwealth sought a material witness warrant. … [Appellant] seems to claim that the [c]ourt

- 11 -

erred when it ordered "[u]pon arrest, [Shaw] is to be brought before th[e trial c]ourt only." However, that is what the rule provides. **See** Pa.R.Crim.P. 150(a)(1) ("[w]hen a defendant or witness is arrested pursuant to a bench warrant, he or she shall be taken without unnecessary delay for a hearing on the bench warrant. The hearing shall be conducted by the judicial officer who issued the bench warrant, or, another judicial officer designated by the president judge or by the president judge's designee to conduct bench warrant hearings."). Here, the Commonwealth sought a material witness warrant to procure [Shaw's] testimony at trial. Accordingly, this issue is without merit.

Memorandum Order, 8/29/2018, at 5 (some citations omitted).

Here, Appellant appears to conflate unlawful *ex parte* communications with hearings held in relation to a bench warrant issued against Shaw to compel her testimony at trial.[10] These hearings were not only lawful, but were required under the Pennsylvania Rules of Criminal Procedure. **See** Pa.R.Crim.P. 150(a)(1), **supra**. No relief is due.

With respect to his third claim, Appellant contends the PCRA court committed a "due process error" when it twice failed to grant Appellant's request for discovery. Appellant's Brief at 33-35. Appellant contends this discovery was necessary "to properly raise" an "alibi witness claim and properly subpoena his alibi witness[.]" Appellant's Brief at 34.

---

[10] Notably, Appellant does not argue that he was unaware of Shaw's bench warrant. In fact, it would appear that the issuance of the warrant was known to Appellant, or should have been known to him. **See** Commonwealth's Memorandum in Support of Evidence Offered at Trial, 1/30/2015, at 3 (detailing the Commonwealth's request for a bench warrant against Shaw as a material witness).

> In PCRA proceedings, discovery is only permitted upon leave of court after a showing of exceptional circumstances. 42 Pa.C.S.[] § 9545(d)(2); Pa.R.Crim.P. 902(E)(1). The PCRA and the criminal rules do not define the term "exceptional circumstances." Rather, it is for the trial court, in its discretion, to determine whether a case is exceptional and discovery is therefore warranted.

*Commonwealth v. Frey*, 41 A.3d 605, 611 (Pa. Super. 2012). "The denial of a request for post-conviction discovery is reviewed for an abuse of discretion. Discovery in PCRA proceedings cannot be used as an excuse for engaging in a 'fishing expedition.'" *Commonwealth v. Edmiston*, 65 A.3d 339, 353 (Pa. 2013) (internal citations omitted). "We have explained that [d]iscretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Flor*, 136 A.3d 150, 154 (Pa. 2016) (internal quotation marks omitted).

After Appellant filed his *pro se* PCRA petition, he filed a petition for discovery on April 3, 2018.[11] Therein, Appellant requested an "unabridged

---

[11] Briefly, we note that on April 24, 2017, prior to filing his *pro se* PCRA petition, Appellant filed a petition for discovery, which the trial court denied because there was "no active petition/motion presently before the [c]ourt." Order, 4/28/2017. There was no abuse of discretion in the court's denial of Appellant's petition. *See Commonwealth v. Martin*, 705 A.2d 1337 (Pa. Super. 1998) (rejecting Martin's argument that requested discovery was necessary in order for him to pursue PCRA relief and in so doing, affirming the court's denial of Martin's motion for discovery based upon no pending action before the court); *see also Commonwealth v. Crider*, 735 A.2d 730, 733 (Pa. Super. 1999) ("[A] trial court, confronted only with a petition
*(Footnote Continued Next Page)*

copy of discovery" pertaining to his case. Petition for Discovery, 4/3/2018, at 1. Appellant stated that without such discovery, an amended PCRA petition "would be looked/ruled upon as bald assertions, and unfounded conclusory allegations." *Id.* Notably, Appellant failed to elaborate on what discovery would be pertinent to which issues that he intended on presenting in his amended petition.

That same day, the PCRA court denied Appellant's request for discovery because Appellant failed "to satisfy the exceptional circumstances requirement of Pa.R.Crim.E. 902(E)[(1),[12]]" and because Appellant's request was "vague." Order, 4/3/2018. Appellant did not attempt to amend his petition further nor did Appellant contest the PCRA court's finding that his vague requests did not satisfy the exceptional circumstances requirement entitling Appellant to discovery. Furthermore, Appellant has not argued on appeal that the PCRA court abused its discretion in finding as such. Thus, no relief is due. *See Frey*, 41 A.3d at 611 ("We will not disturb a court's determination regarding the existence of exceptional circumstances unless

*(Footnote Continued)* ───────────

for production of documents where no action is pending, is in no position to assess a petitioner's claims to determine whether they constitute compelling reasons warranting a grant of the petitioner's petition.").

[12] "Except as provided in paragraph (E)(2), [regarding death penalty cases,] no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1).

the court abused its discretion. … Moreover, we recall that the appellant has the duty to convince us an abuse occurred.") (internal citations omitted).

Lastly, Appellant contends trial counsel was ineffective for failing to call two alibi witnesses: "Gene 'the Harrisburg [c]ab [d]river' and Anthony Moore." Appellant's Brief at 36.

> In order to establish that trial counsel was ineffective for failing to call witnesses, a petitioner must: (1) identify the witness or witnesses; (2) demonstrate that counsel actually knew, or had a duty to know, the identity of the witness or witnesses prior to trial; (3) demonstrate that the witness or witnesses were ready, willing and able to testify for the defense at trial; and (4) demonstrate that the proposed testimony would have been helpful to the defense asserted at trial.

***Commonwealth v. Neal***, 713 A.2d 657, 663 (Pa. Super. 1998).

In considering Appellant's claim of ineffective assistance of counsel for failing to call witnesses, the PCRA court found Appellant was not entitled to relief because Appellant failed "to show that the witnesses existed and [were] available at the time of trial. Nor did [Appellant] attach an affidavit or some other means to show that the witnesses were willing and able to appear. Finally, [Appellant] provided no information as to what this proposed testimony would reveal[.]" Memorandum Order, 8/29/2018, at 4-5. Upon review of the record and applicable filings, we agree.

"Failure to call an alibi witness does not *per se* constitute ineffective assistance of counsel." ***Commonwealth v. Lilliock***, 740 A.2d 237, 245 (Pa. Super. 1999). Thus, Appellant needed not only to identify the alleged alibi witnesses, but Appellant also had the burden of proving that these

alleged witnesses were known to counsel, were willing and able to testify at trial and that their proposed testimony would have been helpful to the defense. *See Neal*, *supra*.

Presumably, based upon Appellant's testimony at trial that he was with Anthony Moore the night of the assault, defense counsel knew of this potential witness.[13] Appellant baldly asserts that these witnesses would have provided favorable testimony to support Appellant's defense that he was not in the area where the assault took place. Such a bald assertion, without more, does not meet his burden.

Moreover, and most notably, Appellant has failed to demonstrate that these witnesses were willing and able to testify on his behalf at trial. This alone precludes Appellant from obtaining relief. *See Commonwealth v. Khalil*, 806 A.2d 415, 422-23 (Pa. Super. 2002) ("This Court will not grant relief based on an allegation that a certain witness may have testified in the absence of an affidavit from that witness to show that the witness would, in fact, testify."). Because Appellant failed to sustain his burden of demonstrating ineffectiveness of counsel, he is not entitled to relief.

In light of the foregoing, as Appellant has failed to convince this Court that the PCRA court erred by dismissing his petition, we affirm the PCRA court's order.

---

[13] While there was testimony at trial regarding Appellant's frequent use of taxicabs, there was no mention of Gene "the Harrisburg cab driver." Thus, there is no indication that counsel was aware of this "witness."

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2019